THOMAS J. DODD, JR.
APPLICATION FOR ADMISSION AS AN ATTORNEY
ON MOTION AND WITHOUT EXAMINATION

Superior Court                                    New London County

MEMORANDUM FILED JANUARY 15, 1945.

Frank L. McGuire, of New London, and M. J. Blumenfeld, of Hartford, for the Applicant.

W. Arthur Countryman, Jr., of Hartford, and Arthur M. Brown, of Norwich, in Opposition.

QUINLAN, J. Under the Connecticut rules for admission to the bar provision is made for a standing committee on recommendations, reading as follows: "There shall be in each county a standing committee on recommendations for admission, consisting of not less than three nor more than five members of the bar of that county, who shall be appointed by the judges of the Superior Court at their annual meeting to hold office for three years from the date of their appointment and until their successors are appointed. Appointments to fill vacancies may be made by the chief justice until the next annual meeting.

"All applications for admission to the bar shall be referred to the committee of the county where the application is filed, which shall investigate the general fitness of each applicant and report to the bar of the county whether he has complied with the rules relating to admission to the bar, is a person of good character and should be admitted." (*Practice Book* [1934] §9, p. 23.)

New London County has such a committee consisting of three attorneys of excellent reputation at the bar. That committee in the course of its duties reported to the bar. Section 8 (*Practice Book* [1934] p. 22) contains the requirements for admission of attorneys of other states without examination.

The matter comes before the court on a motion to dismiss the application and upon the applicant's claim to be admitted. No evidence was offered. At least two of the standing committee on recommendations were in the courtroom.

The Connecticut cases on the subject have to do with the denial of applications, although coming to the court under methods of procedure varying in form. The cases review the history of admissions. The aid of the bar on such matters has always been recognized. Indeed, in *O'Brien's Petition,* 79 Conn. 46, 53, the court said: "A court is but indifferently adapted to the task of passing upon the qualifications for engaging in legal practice of those who appear before it as strangers, which are personal to themselves and independent of educational attainments. These can be easily determined by a bar, to some at least of whom they will not be strangers. A court could only proceed, in such a matter, on testimony given in public. The bar can act upon their own knowledge, or

upon statements made before them in private, and without the formality of an oath." And on page 55 it was said: "The Superior Court, therefore, rightly declined to hear evidence as to questions the decision of which was entrusted to the State bar examining committee, and given to them only in case of those coming before them with the approval of the county bar."

Probably it was recognized in this case that the standing committee was so entrusted, and hence no offer of testimony was made. In the same case, also at page 57, the court further said: "The question of approval or disapproval was one addressed to their discretion as officers of the court, so only that it should be fairly and impartially exercised." In the case here, not only was the report made in accordance with section 9, (*Practice Book* [1934] p. 23) which incidentally very obviously refers to candidates seeking admission by examination as well as those upon motion, but at a bar meeting called for the purpose the report was presented, acted upon unanimously and the action of the meeting endorsed upon it. Implicit in the report is the finding that all requirements had been met.

In the light of the foregoing, if the action of the committee is not attacked as irregular, unfair, or the result of prejudice or ill-will, or of conspiracy (*Higgins vs. Hartford County Bar Asso.*, 111 Conn. 47), nor as being arbitrary or unreasonable or an abuse of their discretionary powers (*Blaney vs. Standing Committee*, 129 Conn. 51, 54), their findings should stand on the same basis before the courts of this State as in the several cases where the application of some individual was denied. It should be observed also that no educational attainment is involved.

The law being as it is, the report of the committee and the action of the bar thereon should stand and the application granted, which is hereby ordered and the motion to dismiss is denied.

Having made disposition of the petition it may not be improper to remark that the motion to dismiss is based not on any claimed untruthful statement of the applicant, but quite the contrary, viz.: because his application truthfully shows he has had a most extensive practice in the United States courts and that therefore he fails to comply with subdivision (1) of section 8 (*Practice Book* [1934], p. 22) which provides

in the case of this applicant that he shall have actually prac-ticed for at least ten years in the highest court of original jurisdiction in the other state bar of which he was a member, to wit: South Dakota. From this it is argued that to accept the nature of the applicant's practice is to accept an equivalent. Our rule fixes no standard as to what that practice shall con-sist of, whether one case in ten years or one case a year. It was suggested that the Lord Chief Justice of England could not be admitted under our rule. Of course not, he is not a member of a state bar, so far as is known. Among the legal fraternity there is frequent discussion as to the legal merit of a trial attorney as against an office attorney. Many of the most eminent attorneys in the large cities of this country and in this State never appear before any court, unless it be a probate court. Judges of our higher courts have occasionally had the same experience. Custom makes law, however, and it has been the recognized custom of our committees on recom-mendation to consider that one so entitled to practice is an actual practitioner. Moreover, South Dakota may be ac-knowledged by the court as having an integrated bar. Some of its foremost members have attested to Mr. Dodd's membership at that bar. The secretary of that bar has solemnly certified that he (Dodd) has been an active member of the bar of South Dakota since 1934, and it happens that the secretaary is per-sonally known to this court as a man of the highest integrity and scholarship.

Above all this is the commonly known fact which the court judicially notices, that no practitioner in the Federal courts can practice in those courts, except as a practitioner in the highest court of a state. Specifically, the language, so far as the Supreme Court of the United States is concerned, is contained in the Revised Rules of the Supreme Court of the United States, adopted February 13, 1939, set forth on page 1629 of volume 83 of the United States Supreme Court Reports, Law-yers' Edition, as follows: "It shall be requisite to the admis-sion of attorneys or counsellors to practice in this court, that they shall have been such for three years past in the highest court of a State, Territory, District, or Insular Possession, and that their private and professional characters shall appear to be good.

"Not less than two weeks in advance of application for admission, each applicant shall file with the clerk (1) a certi-

ficate from the presiding judge or clerk of the proper court showing that he possesses the foregoing qualifications, (2) his personal statement under oath setting out the date and place of his birth, the names of his parents, his place of residence and office address, the courts of last resort to which he has been admitted, the places where he has been a practitioner, and, if he is not a native born citizen, the date and place of his naturalization, and information respecting any reprimand of any court pertaining to his conduct or fitness as a member of the bar, and (3) two letters or signed statements of members of the bar of this court, not related to the applicant, who are resident practitioners within the State, Territory, District, or Insular Possession (to which the application refers as provided in paragraph 1 of this rule) stating that the applicant is personally known to them, that he possesses all the qualifications required for admission to the bar of this court, that they have examined his personal statement and that they affirm that his personal and professional character and standing are good."

And similar provision is made for admission of women. (U.S. Code, *tit.* 28, §353.)

This applicant has had eight cases in the Circuit Court of Appeals and one in the Supreme Court of the United States. He has acted as chief counsel in two hundred and fifty cases and in ten cases as assisting counsel in courts similar to our Superior Court. This information is given by the applicant in response to a question appearing on his printed application and prepared presumably by State or County authority.

The words "actually practiced" should receive a reasonable construction, not a literal one. Our committees on recommendation throughout the State, as above suggested, have customarily so construed them. Perhaps of more weight and persuasiveness, however, is the construction put upon the applicant's status by the Federal courts, and the fact that he has practiced in all the Federal courts so extensively, which he could not have done unless he were a member of a state bar. The quoted language of the requirements to practice before the United States Supreme Court, the highest court of the land, while shorter as to extent of time of practice than required of this applicant, contains a similar norm for qualification and this applicant's admission to that court, as well as the other Federal courts, carries a persuasiveness of construction that well might be at least guiding in this jurisdiction. Otherwise with

no standard fixed by our rule it is possible to attain an absurdity. And finally, our own court very recently in the case of *Lapinski vs. Copacino,* 131 Conn. 119, 125, 126, recognizes that the courts of the United States and of the states form one system of jurisprudence.

Certain it is also that there is no separate and independent Federal bar membership, except as arises from state membership.