CHARLES P. BLANEY *v.* STANDING COMMITTEE ON RECOMMENDATIONS FOR ADMISSION TO THE BAR.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued April 9—decided May 8, 1942.

*Sheldon B. Smith* and *Charles P. Blaney* (pro se), for the appellant (plaintiff).

*Lorin W. Willis,* for the appellee (defendant).

ELLS, J.   In May, 1708, the General Court resolved that "no person, except in his own case, shall be admitted to make any plea at the bar, without being first approved of by the court before whom the plea is to be made" and until he shall have been sworn according to law.  5 Col. Rec. 48.   In 1730 the number of attorneys at law in the colony of Connecticut was limited to eleven, "(viz:) three attourneys in the county of Hartford, and the other four counties to have two attourneys to plead at the bar in each respective county, and no more; which attourneys shall be nominated and appointed from time to time, as there shall be occasion, by the county courts; each county court to appoint the number of attourneys hereby allowed in the county where such court doth preside."   7 Col. Rec. 279.   This limitation of number was soon repealed.   7 Col. Rec. 358.   As early as 1750, the appointment of attorneys was vested in the County Courts.   Statutes, 1750, p. 9.   In 1808 the power to admit was given jointly to the Superior and County Courts; Statutes, 1808, p. 67, chap. 2; but in the Revision of 1821 it was again vested in the County Courts alone; Statutes, 1821, p. 141, § 21.   Upon the abolition of the County Courts in 1855 it was enacted that "The superior court may admit and cause to be sworn as attorneys, such persons as are qualified there-

for agreeably to the rules established by the judges of said court; and all attorneys so admitted shall have the right to practice in all the courts of the state; and said judges are authorized to establish such rules as they shall judge proper relative to the admission, qualifications, practice, and removal of attorneys." Public Acts, 1855, p. 28, § 16. The change was not in the functions of the court, but only in the court which should act. This act of 1855 has ever since remained in force. See General Statutes, Cum. Sup. 1935, § 1627c; General Statutes, § 5346.

Pursuant to this law the judges have from time to time established rules governing admission to the bar. This power over the admission of attorneys has always been exercised in each county largely by the aid of the county bar, and these rules maintain the ancient policy of the commonwealth to place the initiative, in the process of admission to the bar, in the hands of the court and bar of the particular county in which admission may, or properly shall, be sought. "The fundamental idea underlying this system of things was that the court could best ascertain the qualifications of one desiring to practice before it from the judgment of those under, or in association with, whom he had sought to prepare himself for that work, and who were already engaged in it themselves. . . . It was by this bar that the whole business of the civil courts was, until the closing quarter of the nineteenth century, mainly arranged and made ready for disposition. Assignments of cases for trial were made by the bar at meetings presided over by one of their own number. . . ." *O'Brien's Petition,* 79 Conn. 46, 53, 51, 63 Atl. 777. This case contains a scholarly review by Judge Baldwin of the history of law and procedure since 1708. The early pre-eminence of the bar, as relating to the assignment of cases, for example, has been greatly modified

by later rules, but its function in relation to the admission of attorneys has been largely preserved. In the *O'Brien* case the local bar of the county declined to recommend the applicant, and it was held that upon his petition to the Superior Court to determine his qualifications for admission it was proper for it to inquire whether the bar, in withholding its recommendation, had acted fairly and reasonably or from prejudice and ill will; but that having found that the bar had acted fairly and impartially, it did not err in refusing to go further and hear evidence as to the petitioner's qualifications.

Charles P. Blaney, who had long practiced law in New York and maintained an office there, became a resident of the town of Wilton in Fairfield County, Connecticut, and sought admission to the bar of this state, upon motion and without examination, under the provisions of § 8 of the Practice Book, as amended. His petition was duly referred to the standing committee on recommendations for admission to the bar of Fairfield County; he appeared and was heard; the committee filed a report disapproving the application; the bar of Fairfield County held a meeting, duly approved its committee's report, and voted to deny the application. Mr. Blaney then petitioned the Superior Court in Fairfield County to admit him to the bar. He alleged compliance with all the rules governing such admission, cited the action of the bar and its committee, and claimed that these bodies had acted arbitrarily and without just cause. The defendant appeared by counsel, the matter was duly heard, and the court rendered judgment dismissing the application. The applicant appealed to this court.

The trial court concluded that the issue was whether the bar and its committee had acted arbitrarily or unreasonably, or had abused their discretionary powers,

in denying the petition, and decided they had not. At the root of the issue is the question whether the requirement of the rule in force at the time of the application, that the applicant must show he "intends to practice law in this state," had been reasonably satisfied. Rules of Court, § 8, amended to September 1, 1938.

The court found that for many years the applicant, in connection with his New York practice, has sent matters involving practice in Connecticut to lawyers in this state which they have handled for him; that at the time of his application there was pending in the Superior Court in Fairfield County a negligence case sent to a Connecticut attorney by Mr. Blaney; and that the primary motive of the applicant in presenting his application for admission to the bar in this state was his desire to participate personally in the trial of this action. It further found that he intended to continue his practice in New York and, if necessary, to devote his whole time to such practice, maintaining his office there as he had always done; that he had made no definite plans for the practice of law such as would give him a definite, established status as a practitioner of law in this state; and that as far as it appeared he did not intend to devote any specific or substantial part of his time to such practice. No material changes can be made in these findings. The most that Mr. Blaney's testimony before the committee amounted to was that he intended to practice here if and when legal business sufficient to make it worth while developed.

Upon the facts thus found it cannot reasonably be said that Mr. Blaney intends to practice law in Connecticut within the meaning of the rule. The mere assertion of such an intent is not enough. Intention is a question of fact, to be ascertained by the trier upon

all the circumstances of the case. The meat of the intent of the rule is not so much the time to be devoted to the practice of law here as it is an intention, for a substantial portion of a lawyer's time, to make his services reasonably available to those in this state who are in need of legal advice. There must also be an intent to do the necessary acts promptly upon the receipt of permission. Whatever intent he may have in the uncertain and distant future could not be binding upon the committee or the bar in its decision. It is neither necessary nor advisable that we now make a comprehensive interpretation of the language of the requirement in question so as to include and exclude all possible factual situations. It is sufficient that upon the facts of this particular case the applicant has not satisfied the requirement.

According Mr. Blaney every consideration permitted by our law, we decide that his testimony constitutes a frank admission of his lack of intention to practice law in this state within the meaning of the rule. His testimony in the Superior Court, to which he asks us to resort, falls far short of establishing his right to practice here. It follows that the trial court was correct, upon the facts found, in deciding that he did not come within the fair meaning of the rule; and particularly that he has not established an abuse of discretion on the part of the committee and the bar, which is the real issue.

There is no error.

In this opinion the other judges concurred.