SIDNEY S. HEIBERGER *v.* RALPH CLARK ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, JS.

Argued December 9, 1960—decided March 21, 1961

*Louis Feinmark,* for the appellant (plaintiff).

*William W. Gager,* for the appellees (defendants).

BALDWIN, C. J.  The plaintiff brought this action against the members of the bar examining committee of the state of Connecticut for a judgment declaring that he was entitled, unconditionally, to take the examination given in December, 1957, for admission to the bar and that he is now entitled to admission to the bar.  He alleges, in substance, that he has complied with all the requirements for admission other than those imposed by subsections fifth, sixth and seventh of § 4 of the rules of the Superior Court concerning the admission of attorneys; Practice Book § 4;[1] and that he

---

[1] "[Practice Book] Sec. 4.  QUALIFICATIONS FOR ADMISSION.  To entitle an applicant to admission to the bar, except under Sec. 8 of these rules [admission of attorneys of other states without examination], he must satisfy the committee:  *First.*  That he is a citizen of the United States.  *Second.*  That he is a resident of this state or intends to become such resident.  *Third.*  That he is not less than twenty-one years of age.  *Fourth.*  That he is a person of good moral character.  *Fifth.*  That he has complied with the following rules concerning prelaw education:  (A) If his law studies pursuant to the rules commenced prior to January 1, 1951, before commencing the study of law he (1) has graduated from a college the standing of which and the course or courses taken by the applicant shall be approved by the committee; or (2) has registered as a regular student or candidate for a degree in a college the standing of which shall be approved by the committee, and has attended and successfully completed courses acceptable to the committee constituting one-half of the work required for a degree in such college.  (B) If his law studies pursuant to the rules commenced after January 1, 1951, before commencing the study of law he (1) obtained a bachelor's degree for acceptable undergraduate work in residence at a college accredited by the committee; or (2) completed, in residence at a college accredited by the committee, 90

has fulfilled the requirements of Public Acts 1957, No. 528, entitled "An Act concerning Admission to the Bar Examination of Certain Residents of This State," now General Statutes § 51-82.[2]

semester or 135 quarter hours of college credit acceptable toward a bachelor's degree at such college and acceptable to the committee; provided that in such event a bachelor's degree must have been obtained at a college accredited by the committee before a law degree is obtained; or (3) obtained a master's degree for postgraduate work acceptable to the committee in residence at a college accredited by the committee, having already obtained a bachelor's degree for acceptable undergraduate work in residence at a college. The provisions of (B) aforesaid shall not apply to any applicant who served in the armed forces of the United States during World War II and was honorably discharged from such service and who, by reason of permanent and total service-connected blindness, was unable to complete his prelaw education under (A) aforesaid prior to January 1, 1951, provided that such applicant completed his prelaw education under (A) aforesaid and commenced his law studies prior to January 1, 1952. *Sixth.* That he has complied with the following rules concerning his legal education: After arriving at the age of eighteen years and after having completed his prelaw education as provided for under subsection *Fifth* of this section, he has (a) pursued the study of law as a regular law student in residence at and obtained a bachelor of laws degree from a law school accredited by the committee; or (b) obtained a master of laws degree for postgraduate work acceptable to the committee in residence at a law school accredited by the committee, having already obtained a bachelor of laws degree at a law school for work acceptable to the committee done in residence at such law school. *Seventh.* That he has registered his intention to study law in preparation for taking the bar examinations in accordance with these rules and the regulations of the committee and has paid a registration fee of $10. *Eighth.* That he has filed with the clerk of the superior court his application to take the examination and for admission to the bar, all in accordance with these rules and the regulations of the committee, and has paid an application fee of $25. *Ninth.* That he has satisfactorily passed an examination in law in accordance with the regulations of the committee. *Tenth.* That he has complied with all of these rules and the regulations of the committee pertinent to his application."

[2] "Sec. 51-82. ADMISSION TO EXAMINATION OF ATTORNEYS ADMITTED IN OTHER STATES. Any person whose moral qualifications have been approved by the standing committee on recommendations of the county in which such person resides and in which such person has

The complaint contains, in substance, the following pertinent allegations: The plaintiff has resided in this state since 1940. He was admitted to practice at the bar of New York in 1935, is a member of that bar, and has practiced law in New York for not less than ten years. In July, 1957, he filed with a clerk of the Superior Court an application to take the Connecticut bar examination, and he was informed in November, 1957, that his application had been approved. In December, he was told by the bar examining committee that his educational qualifications did not meet the requirements as to prelaw education and as to graduation from a law school which was, at the time the applicant was graduated, accredited by the committee. He was, however, permitted to take the examination in December, 1957, on condition that his application be thereafter approved by the committee. He took the examination and "upon information and belief" passed it, but the committee refused to recommend him for admission to the bar because he had not complied with the rules of the Superior Court as to an applicant's educational qualifications.

The defendants demurred to the complaint on the ground that it did not aver that the plaintiff had "complied with the Rules and the Regulations relating to his educational qualifications" and that Gen-

made application for admission to the bar and who has been a resident of this state for more than ten years immediately preceding such application shall be permitted to take the bar examinations and on satisfactorily completing such examinations may be admitted to practice, provided all requirements of the rules established by the judges of the superior court shall be met except educational qualifications, if such person has been admitted to practice before the highest court of original jurisdiction of a state of the United States for twenty or more years and at the time of filing such application is a member in good standing of the bar of such state, and has practiced law in such state for not less than ten years."

eral Statutes § 51-82 was unconstitutional. The court sustained the demurrer. The plaintiff having failed to plead further, judgment was rendered that he was not entitled to the relief prayed for. He has appealed. The appeal presents this issue: Does the legislative department of the government of this state possess the power to fix the qualifications for admission of persons to practice law, so that the provisions of General Statutes § 51-82 prevail over the rules adopted by the judges of the Superior Court?

At the outset of our consideration of this case we are beset with procedural difficulties. Questions of law arising upon proceedings for admission to the bar are properly presented in a petition to the court. *Blaney* v. *Standing Committee,* 129 Conn. 51, 26 A.2d 354; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 415, 165 A. 211; *O'Brien's Petition,* 79 Conn. 46, 59, 63 A. 777; *In re Hall,* 50 Conn. 131. This is so because such proceedings are not actions or suits at law. They are in the nature of investigations by the courts or their representatives to determine whether the candidate is qualified to become an officer of the courts. *In re Application of Dodd,* 131 Conn. 702, 707, 42 A.2d 36; *Rosenthal* v. *State Bar Examining Committee,* supra; *In re Durant,* 80 Conn. 140, 148, 67 A. 497; *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 15, 22 A. 441. There are no adversary parties in the technical legal sense, although our reports contain cases which, in their titles, carry as parties not only the names of the petitioners but those of bar examining committees and grievance committees. *In re Application of Dodd,* supra, 705; *Grievance Committee* v. *Broder,* 112 Conn. 263, 265, 152 A. 292. The bar examining committee is an arm of the court to which is en-

trusted the administration of specific details, including, and properly so, the power to act on the educational qualifications for admission to the bar. *State ex rel. Bazil* v. *Boardman,* 127 Conn. 475, 477, 18 A.2d 370; *Rosenthal* v. *State Bar Examining Committee,* supra, 417. The committee can act, however, only under the supervision of the court. It is the court, and not the committee, which takes the final and decisive action. *In re Application of Dodd,* 132 Conn. 237, 244, 43 A.2d 224; *Grievance Committee* v. *Broder,* supra. Proceedings for admission to the bar or for disbarment or disciplinary action are taken primarily for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. *Grievance Committee* v. *Broder,* supra, 266, quoting from *State* v. *Peck,* 88 Conn. 447, 452, 91 A. 274. The end result of these proceedings is a judgment from which an appeal lies to this court. *In re Application of Dodd,* 131 Conn. 702, 707, 42 A.2d 36; *O'Brien's Petition,* supra.

The complaint in this case purports to be one for a declaratory judgment. General Statutes § 52-29; Practice Book §§ 276-280. The attempt to make members of the state bar examining committee parties defendant and, by so doing, to create a civil action raising issues of fact and law which could only be properly raised on a petition to the court is of no avail. Furthermore, the complaint does not allege, as it should, that there is a substantial question or issue in dispute or an uncertainty in legal relations, although it can be said that the complaint contains allegations raising the clear inference that this is so. See *Bania* v. *New Hartford,* 138 Conn. 172, 175, 83 A.2d 165; Practice Book, Forms Nos. 386-388. The prayers for relief do not

comply with the rules or with the suggested forms. Practice Book § 276 & Forms Nos. 386-388.

The members of the bar examining committee have demurred to the complaint. Ordinarily, a demurrer to a complaint seeking a declaratory judgment can be interposed only where the complaint contains a prayer for coercive relief. *United National Indemnity Co.* v. *Zullo,* 143 Conn. 124, 131, 120 A.2d 73; *Bird* v. *Plunkett,* 139 Conn. 491, 504, 95 A.2d 71; *Hill* v. *Wright,* 128 Conn. 12, 15, 20 A.2d 388. In *Buxton* v. *Ullman,* 147 Conn. 48, 50, 156 A.2d 508, however, we considered the constitutionality of a statute in a declaratory judgment action which was demurred to on the ground that the rights and jural relationships of parties similarly situated had been conclusively determined by previous decisions. The instant case raises substantially the same question of constitutionality as was raised and decided in *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 232, 140 A.2d 863.

Although the pleadings fail to comply with the principles laid down in our rules of practice and decisions, we are reluctant to dismiss this appeal on procedural grounds. The pleadings are improper, but they present the basic issue of law understandably. Neither side has sought to take advantage of the shortcomings of the pleadings. The matter is one of great importance to the plaintiff, and to the public and the bar as well. A dismissal of this appeal could only result in the raising of the precise question again, either on a petition by this plaintiff or on one by a person similarly situated. We are constrained, therefore, to consider the constitutionality of the statute on which the plaintiff relies and to treat that issue, as the parties and the trial court have treated it, as properly raised. See

*Cyphers* v. *Allyn,* 142 Conn. 699, 702, 118 A.2d 318; *West* v. *Egan,* 142 Conn. 437, 441, 115 A.2d 322; *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 673, 88 A.2d 388.

The constitution of our state, adopted in 1818, divides the powers of government into three distinct departments, "and each of them [is] confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Conn. Const. art. II. Article third, § 1, vests the legislative power in a General Assembly. Article fifth, § 1, states: "The judicial power of the state shall be vested in a supreme court of errors, a superior court, and such inferior courts as the general assembly shall, from time to time, ordain and establish: the powers and jurisdiction of which courts shall be defined by law." Fixing the qualifications for, as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power. *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* supra; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 415, 165 A. 211; *O'Brien's Petition,* 79 Conn. 46, 55, 63 A. 777; see *McGovern* v. *Mitchell,* 78 Conn. 536, 548, 63 A. 433. Irrespective of legislation, the rule-making power is in the courts. *In re Appeal of Dattilo,* 136 Conn. 488, 492, 72 A.2d 50. The great weight of authority elsewhere accords with this principle. *Brydonjack* v. *State Bar,* 208 Cal. 439, 443, 281 P. 1068; *Application of Kaufman,* 69 Idaho 297, 315, 206 P.2d 528; *In re Day,* 181 Ill. 73, 89, 54 N.E. 646; *Opinion of the Justices,* 279 Mass. 607, 609, 180 N.E. 725; *State ex rel. Ralston* v. *Turner,* 141 Neb. 556, 571, 4 N.W.2d 302; *Application of Sedillo,* 66 N.M. 267, 271, 347 P. 162; *Olmsted's Case,* 292 Pa. 96, 103, 140 A. 634;

*In re Bledsoe,* 186 Okla. 264, 266, 97 P.2d 556; *Application of Levy,* 23 Wash. 2d 607, 612, 161 P.2d 651; *In re Cannon,* 206 Wis. 374, 379, 240 N.W. 441; 5 Am. Jur. 271, § 15. Some of the cases cited take the position that the legislature can, in the exercise of its police power, prescribe minimum standards but that these cannot prevail if the courts require higher qualifications. We are not concerned with that principle here, because the statute by virtue of which the plaintiff seeks admission does not purport to set up minimum standards. It is designed to embrace the circumstances of his case or, at best, to enable a relatively small number of applicants, who cannot, under the rules, qualify for the bar examination, to substitute admission to the bar in another jurisdiction and ten years of practice under laws and procedures different from ours for the educational qualifications they lack for admission here.

The power to admit persons to practice in this state has been exercised with the help and assistance of committees of the bar, pursuant to rules having the sanction of the judges of the Superior Court. *In re Application of Dodd,* 132 Conn. 237, 243, 43 A.2d 224; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 414, 165 A. 211; *O'Brien's Petition,* 79 Conn. 46, 51, 53, 63 A. 777. The reasons for this principle and practice have been fully discussed in our cases. It suffices to say that attorneys are officers of the court appointed to assist the court in the administration of justice and that the property, liberty and often the lives of their clients are in their hands, so that a very high degree of intelligence, knowledge, academic and legal training, judgment and, above all else, integrity is demanded. *State Bar Assn.* v.

*Connecticut Bank & Trust Co.,* 145 Conn. 222, 234, 140 A.2d 863; *Rosenthal* v. *State Bar Examining Committee,* supra; *State* v. *Peck,* 88 Conn. 447, 452, 91 A. 274; *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 17, 22 A. 441.

The plaintiff points to General Statutes § 51-80[3] and argues that, in fixing the qualifications for admission to the practice of law and admitting persons thereto, the courts have relied on this statute and its predecessors as the source of their power and thus have recognized the superior power of the legislature to determine who shall be admitted to practice law before the courts. A resume of the history of § 51-80 demonstrates that this argument is fallacious. The early settlers of this state—in fact, most of those who came during the first century of the colony—were from the British Isles. The only system of courts and lawyers with which they could be presumed to be familiar was that of England. There, from very early times, schools for the study of law existed to qualify men to practice in the English courts. See "Inns of Court and Chancery," 12 Encyc. Britannica 374. From these ancient schools a system of inns of court and chancery, still to some extent persisting, was evolved for the training of lawyers. See *O'Brien's Petition,* supra, 52. Lacking inns of court and chancery, Connecticut, in her early colonial days, found their counterparts in the local county bars. Id., 53. As early as 1708, the general court enacted legislation which provided that no attorney could be admitted to the bar of any county court or the court of assistants (which be-

---

[3] "Sec. 51-80. ADMISSION. The superior court may admit and cause to be sworn as attorneys such persons as are qualified therefor, agreeably to the rules established by the judges of said court, and said judges may establish rules relative to the admission, qualifications, practice and removal of attorneys."

came, in 1711, the Superior Court; 3 Osborn, History of Connecticut, p. 138), "without being first approved of by the court." Statutes, 1702-1733, p. 135. In 1730, the matter of admitting attorneys was committed to the county courts. Id., p. 373. The function continued in the county courts until 1808, when it was provided that the Superior Court and the county courts should make rules for admission to the bar. Statutes, 1750, p. 9; id., 1796, p. 35; id., 1808, p. 67; *O'Brien's Petition,* supra, 50. By the time of the revision of the statutes in 1821, the matter of admitting attorneys had been again committed to the county courts. Statutes, 1821, p. 141, § 21. There it remained until the abolition of those courts in 1855. See Public Acts, 1855, c. 26, § 17. At that time, the General Assembly enacted a statute which stated: "The superior court may admit and cause to be sworn as attorneys, such persons as are qualified therefor agreeably to the rules established by the judges of said court; and all attorneys so admitted shall have the right to practice in all the courts of the state; and said judges are authorized to establish such rules as they shall judge proper relative to the admission, qualifications, practice, and removal of attorneys." Public Acts 1855, c. 26, § 16; *Blaney* v. *Standing Committee,* 129 Conn. 51, 52, 26 A.2d 354. Substantially the same language has been retained in every revision since that time. Rev. 1875, p. 44 § 29; Rev. 1888, § 784; Rev. 1902, § 458; Rev. 1918, § 5461; Rev. 1930, § 5343; Rev. 1949, § 7638; Rev. 1958, § 51-80.

It is significant that legislation calling upon the courts to make rules for the admission of attorneys spans two separate and distinct periods in the history of the government of this state, one prior, and

the other subsequent, to the adoption of the constitution of 1818. Prior to that time, the General Assembly had legislative, executive and judicial powers. *State ex rel. Morris* v. *Bulkeley,* 61 Conn. 287, 365, 23 A. 186; *Brown* v. *O'Connell,* 36 Conn. 432, 446; see *Proprietors of White School House* v. *Post,* 31 Conn. 240, 257; 3 Osborn, History of Connecticut, p. 135; 1 Swift, System, p. 60. One of the main objects of those who, before 1818, urged the framing and adoption of a new constitution was to divest the General Assembly, or the "Generall Court and Assembly," as it was called in the charter of 1662, of all judicial power. *Styles* v. *Tyler,* 64 Conn. 432, 448, 30 A. 165; *Brown* v. *O'Connell,* supra; Trumbull, Constitutions of Connecticut, pp. 39-41. The constitution of 1818 stripped the General Assembly of all judicial power. *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 583, 592, 37 A. 1080, 38 A. 708; *Bridgeport Public Library & Reading Room* v. *Burroughs Home,* 85 Conn. 309, 319, 82 A. 582; *Brown* v. *O'Connell,* supra; see 1 Swift, System, p. 74. The General Assembly can create an inferior court and define its jurisdiction; *Brown* v. *O'Connell,* supra; and it has done so. But the court so created derives its judicial power from the fifth article of the constitution, as do all the courts in this state, and not from any legislative grant. The Superior Court, one of the repositories of the judicial power of the state specifically named in the constitution; see *Styles* v. *Tyler,* supra, 450; is a court of general jurisdiction, with power to hear and determine judicial matters not confided to some other court. *LaBella* v. *LaBella,* 134 Conn. 312, 316, 57 A.2d 627; *Antman* v. *Connecticut Light & Power Co.,* 117 Conn. 230, 237, 167 A. 715. The constitution of 1818 having shorn the General Assembly of all

judicial power, and the admission of attorneys to practice being an exercise of judicial power, any attempt by the General Assembly to confer upon the courts the power to admit attorneys is a nullity, for the General Assembly has no such power to confer.

The fact that the General Assembly in 1708, a hundred and ten years before the adoption of the constitution of 1818, had assigned to the courts the matter of the admission of attorneys; Statutes, 1715, p. 135; indicates that under the government established by virtue of the charter of 1662 of Charles II, the General Assembly, although it could establish and abolish courts, recognized and conceded that the admission of attorneys was a prerogative of the courts themselves. Then too, it was necessary that the General Assembly specify which of the courts then in existence—the county courts and the court of assistants, the forerunner of the Superior Court —should have jurisdiction of the matter. At the time the constitution was adopted in 1818, the Superior Court and the county courts had jurisdiction to admit persons to the practice of law in their respective courts. Statutes, 1808, p. 67. After the adoption of the constitution, legislation was enacted to fix which of the courts should perform this function, there being at that time a Supreme Court of Errors, a Superior Court, and county courts. While the power to admit persons to practice is a judicial one inherent in the courts as a separate and distinct department of government, nevertheless the legislature deemed it necessary, under that part of article fifth of the constitution which states that the jurisdiction of the courts shall be defined by law, to enact legislation fixing the jurisdiction in some court or courts of the admission of persons to the practice

of law. Therefore in 1821, as hereinbefore stated, the matter was confided to the care of the county courts, where it remained until the abolition of those courts in 1855. Statutes, 1821, p. 141, § 21; Public Acts 1855, c. 26, §§ 16, 17. We held in *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 231, 140 A.2d 863, that what is now General Statutes § 51-80 can be construed only as a legislative recognition of the inherent power of the Superior Court, a constitutionally established tribunal, to promulgate rules for the admission of attorneys. It can be construed further as legislation designed, not to confer a judicial power upon the Superior Court, but rather to place within the limits of the jurisdiction of that court, as distinguished from any other, the matter of fixing by rule the qualifications necessary for the practice of law and the procedure to be followed for admission to practice. *Styles* v. *Tyler,* 64 Conn. 432, 452, 30 A. 165; *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 134, 32 A.2d 547; *Blaney* v. *Standing Committee,* 129 Conn. 51, 53, 26 A.2d 354. Any attempt on the part of the legislative department to direct what the rules shall be, and to determine what qualifications applicants for admission shall possess, transgresses the constitutional power of that department. We hold General Statutes § 51-82 unconstitutional.

The courts have always been, and still are, ready to amend their rules when it is apparent that an injustice is being done to an applicant or to a particular class of applicants. The decisive issue in the instant case, however, is the constitutionality of § 51-82. The resolution of that issue disposes of this case.

There is no error.

In this opinion the other judges concurred.