IN RE PETITIONS OF RICHARD JACKSON AND
JOHN WILLIAM SHIELDS.

JANUARY 23, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. These are two petitions for admission on motion, so called, to the bar of this state pursuant to provisions therefor set out in rule 1 A of the rules of this court relating to the admission to practice of attorneys and counselors. In compliance with the pertinent provision of rule 3, these petitions, after filing, were referred to the board of bar examiners for investigation and for recommendation by said board as contemplated in rule 5. Upon completion of an investigation, said board of bar examiners in each case denied recommendation for admission to the bar, and each petitioner has prosecuted his appeal from that decision to this court.

It appears from the record that Richard Jackson, hereinafter referred to as petitioner Jackson, applied for admission to the bar of this state under the pertinent provision of rule 1 A on October 6, 1961, and recommendation for admission was denied by the board of bar examiners on January 17, 1962. John William Shields, hereinafter referred to as petitioner Shields, made a similar application for admission to the bar on March 14, 1960, and recommendation for admission was denied on July 19, 1960.

It is clear from the record that each petitioner is a man of unimpeached integrity and of excellent reputation. Each has an impressive educational background and has achieved substantial success in his chosen field of endeavor. In each case the board of bar examiners made clear that its denial of recommendation for admission was based solely upon its finding of noncompliance with the proviso set out in rule

1 A relating to the applicant's prior engagement in the general practice of law.

It appears that petitioner Jackson was born in Medford, Massachusetts, on December 28, 1910. He graduated from Phillips Academy in Andover in 1929, from Dartmouth College in 1933, and from Columbia Law School in 1938. He was admitted to the bar of the state of New York in 1939 and practiced law in that jurisdiction until 1943, at which time he entered the naval service of the United States. Upon leaving the naval service in 1946, he was admitted to the bar of the Commonwealth of Massachusetts and at that time became associated with the law department of the Boston & Maine Railroad. He continued in the employment of that corporation until 1957, rising to the position of general counsel in the law department thereof. In 1957 he accepted a presidential appointment as Assistant Secretary of the Navy, in which capacity he served until 1961.

It further appears that petitioner Shields was born in East Providence, Rhode Island, on April 2, 1912 and that in June 1931 he graduated from La Salle Academy in the city of Providence. It further appears that he graduated from Providence College in 1935 and from the Georgetown University School of Law in 1940, at which time he was admitted to the bar of the District of Columbia, where he practiced law until he entered the naval service of the United States in 1942. He has continued to serve in the naval establishment in the capacity of a Legal Officer until the present time, wherein he now holds the rank of Commander.

Admission on motion, so called, to the bar of this state contemplates the admission without examination of applicants who, as members of the bar of another state, have been actively engaged in the general practice of law for a period of ten years. It is conceded that the denial of recommendation for admission on motion was predicated in

each case upon the conclusion of the board that the applicant had not established that he had engaged in such general practice of the law for the period of time prescribed in rule 1 A.

Rule 1 A prescribes the qualifications to be established by those desiring admission to the bar of this state and includes a specification of the minimal educational requirements that must have been attained by such applicants. Rule 1 A thereafter contains the following proviso: *"Provided,* that any person complying with the provisions of paragraph *First* hereof, who has been admitted to the bar in some one of the United States or in the District of Columbia, and has been engaged in active general practice of law therein for at least ten years out of the fifteen years immediately preceding filing of application for admission in this state, shall *prima facie* be entitled to admission to the bar of this state; *provided, further,* that such person shall otherwise be qualified according to the rules of court and of the board of bar examiners."

Rule 5 of said rules prescribes the method by which applications for admission to the bar shall be processed by the board of bar examiners. This rule, in pertinent part, reads as follows: "The board of bar examiners shall investigate the allegations in the applications and supporting statements referred to them, shall ascertain the character, qualifications, and attainments of the several applicants, and, unless otherwise specially ordered, shall examine the applicants as to their knowledge of law, and shall report to the court the names of such applicants as they shall recommend for admission to the bar." It would appear then that the examiners, upon making a determination that an applicant for admission on motion had established his compliance with the prescribed provisions of the proviso in rule 1 A, shall, absent some other noncompliance, recommend his admission to the bar and request the court to specially

order, as contemplated in rule 5, that such admission be without examination, which, absent such special order, is required by rule 5. It was this recommendation to specially order the admission without examination of the instant petitioners that was denied in each case by the board.

The posture in which these appeals are presented brings into issue primarily the meaning of the phrase "general practice of law" as it is used in the proviso. We are of the opinion that the meaning properly to be ascribed to this phrase can be ascertained only from the language of the proviso considered in its entirety and in the light of the clear purpose thereof, which is to provide for the admission on motion to our bar of lawyers who by actual experience in the practice of law have established that their qualifications are such as to warrant their being admitted without examination as to their knowledge of the law.

The portion of the rules which we are now considering is in the form of a proviso. However, it is our opinion that its operative effect, unlike that of most provisos, is not limited to those portions of the rule which immediately precede it, that is, the specification of the minimal educational requirements for admission to the bar. Rather, the circumstances here, in our opinion, disclose an intent that the terms of the proviso shall have application to the provisions of rule 5, which relates to the examination of applicants as to their knowledge of the law. See *Bruzzi* v. *Board of Appeals,* 84 R. I. 220.

The first condition for acquiring eligibility for admission under the proviso is to establish that the applicant "has been admitted to the bar in some one of the United States or in the District of Columbia * * *." The phrase "admitted to the bar" when used in this context was intended to be given its ordinary meaning, that is, that admission to the bar of some other jurisdiction was by the conventional method of complying with specified moral and intellectual

qualifications and by attaining a satisfactory grade in an examination of the applicant's knowledge of the law. In other words, the proviso contemplates restricting eligibility for admission pursuant thereto to lawyers whose initial admission to practice was on proof of qualification.

Eligibility for admission under the proviso is further conditioned upon a showing that the applicant had been engaged in the "active general practice of law" for a period of ten years in the aggregate out of the fifteen-year period immediately preceding application. The purpose of this condition is to insure that lawyers whose qualification for practice initially had been established by examination had thereafter in the practice of law accumulated a sufficient experience to make a prima facie case of their present qualifications for admission without examination to the bar of this state. It follows then that the phrase "general practice" does not contemplate necessarily the acquisition of such experience by activities ranging over the entire field of legal action. Such a view would unreasonably limit the scope of the proviso and exclude from its purview lawyers who, basically qualified, for economic, personal, or intellectual reasons elected to pursue their professional careers by specializing in some particular field of legal activity. It is our opinion that, interpreted consistently with the purpose of the rule, the phrase "general practice" was intended to encompass all of the manifold activities of a legal nature that inhere in the consequences of those human relationships of which the law takes cognizance.

These human relationships of which the law takes cognizance tend to generate conflicts of interest and frequently to result in litigation. It has long been the policy of the law, reflecting enduring public interest therein, to adjust these conflicts and to terminate such litigation as arises therefrom. Generically, it is the achievement of such adjustments of conflicting interests and the determination of

litigation arising out of such conflicts that constitute the practice of law. It is our view that the term "general practice" as used in this rule encompasses all legal activities that are relevant to these human relationships and that the lawyer who actively engages in the adjustment of such conflicts or in the conduct of litigation resulting therefrom is engaged in the general practice.

It is our further opinion that, the whole being inclusive of the parts, a lawyer who engages in legal activities with respect to conflicts or litigation arising out of any particular relationship is engaged in the general practice of law. In other words, a lawyer who specializes in the adjustment of conflicts and the termination of litigation generated by some particular human relationship, in our opinion, is engaged in the general practice of law. It makes no difference that such services are performed for natural or artificial persons or that such services are performed entirely in behalf of a single corporation or in the interests of one department of government. The test is, in our opinion, whether the legal action so engaged in was for the purpose of adjusting conflicts of interests or terminating litigation generated by and relevant to one of the human relationships of which the law takes cognizance. Where that is so, whether the legal action is limited to the consequences of one or of several such relationships, it constitutes the general practice of law within the meaning of this rule.

This is not to hold, however, that the rule is entirely without limitation. The rule requires that the applicant have been engaged in the *active* general practice of law" for the required term of years. (italics ours) It is our opinion that the word "active" substantially restricts the availability of the rule to potential applicants for admission on motion. In the context in which it here appears, the word "active" is exclusive of remunerative activity other than legal. In the case of *Appeal of Rogers,* 192 Md. 737,

the Maryland court held that the word "actively" did not encompass a practice that was "more or less of a desultory nature consisting of a few cases, none of which apparently were tried in Court, and an occasional consultation, and some debt collections." It is our opinion that in the instant context engagement in the active general practice means a showing that the legal activities of the applicant were pursued on a full-time basis and constituted his regular business.

The petition in each case here contains averments as to the nature of the legal activities in which the petitioner engaged during the critical period of years prior to his application for admission on motion. It is our opinion that we may not properly concern ourselves with these averments in the instant circumstances. In rule 1 A it is provided that persons desiring to be admitted to the bar of this state shall make application "and shall prove" compliance with the prescribed qualifications and conditions. The effect of this provision is, in our opinion, to confer the relevant fact-finding power upon the board of bar examiners in the first instance at least. Therefore, upon review of the decision of the said board under this rule, the findings of the board will not be disturbed by this court unless clearly wrong.

These cases, in our opinion, are not at this time susceptible of determination on the basis of the clearly wrong rule. It does not appear from the record in either case what meaning was given by the board of examiners to the phrase "active general practice of law." Nor does the record disclose findings of fact on the part of the board that are sufficient to move this court to determine whether, in making such findings, the board either overlooked or misconceived material evidence on the controlling question.

The circumstances here, in our opinion, are such that the ends of justice will be best served if each case were returned

to the board of bar examiners for such further action pursuant to this opinion as is necessary and appropriate. We have charged the board of bar examiners with the onerous task of securing the public interest by maintaining a conscientious and zealous watch upon the standards to be met by those who would point to membership in our bar as testimony of their professional competence. This court is reluctant to add unnecessarily to the burden the board has thus assumed, but in the circumstances the importance of the issues raised is such as to overcome that reluctance.

The appeal of the petitioner in each case is sustained, the decision appealed from is reversed, and each case is remitted to the board of bar examiners for its further consideration in accordance with this opinion.

CONDON, C. J., dissenting. I cannot agree with the court's construction of the phrase "general practice of law." In my opinion such construction is too loose and erodes the rule if it does not repeal it. The effect is to declare that a lawyer even though he specializes in some department of the law is nevertheless engaged in general practice. With all due deference it seems to me that this does violence to the fundamental meaning of the word "general." It has been usually considered as opposed to "particular," and as indeed the antonym of "special." To say that a specialist is nevertheless a general practitioner would appear to be a contradiction in terms.

Whether the court's exposition of its concept of the rule will give the board the guidance which it needs to determine these petitions fairly within the spirit as well as the letter of the rule I have some doubt. However, since it must reconsider them in accordance with the court's opinion I deem it neither necessary nor useful to expound my own concept of the rule.

*Richard Jackson,* pro se.

*John William Shields,* pro se.