## In re Application of Eugene E. Hunt for Admission to the Bar

King, C. J., Alcorn, House, Thim and Ryan, Js.

Argued May 3—decided May 31, 1967

*Irving H. Perlmutter,* with whom was *Andrew M. Ullman* and, on the brief, *Abraham S. Ullman,* for the appellant (standing committee for New Haven County on recommendations for admission to the bar).

*Thomas J. O'Sullivan,* for the appellee (applicant).

KING, C. J. The applicant, Eugene E. Hunt, was admitted to the practice of law in Maryland in 1951 and thereafter, until 1960, was employed, in that state, by the Baltimore and Ohio Railroad as assistant general solicitor. In 1960, Hunt came to Connecticut, where he has since lived, and intends to continue to live, and has ever since been employed by the New York, New Haven and Hartford Railroad, a Connecticut corporation hereinafter referred to as the New Haven, in its law department with the title of commerce counsel. During the period of his employment by the New Haven and prior to his temporary admission to the Connecticut bar, Hunt abstained from practice in the state courts of Connecticut but did appear on behalf of the New Haven before United States courts and before the Interstate Commerce Commission. The appellant, the Standing Committee on Recommendations for Admission (to the bar) for New Haven County, makes no claim that these appearances were unauthorized or illegal.

On October 8, 1963, Hunt applied for admission, on motion and without examination, to practice law in Connecticut, stating in his application that his reason for desiring to be admitted to the Connecticut bar "is to represent The New York, New Haven and Hartford Railroad Company and other clients as counsel in state and federal courts".

Under the provisions of what is now § 14 of the Practice Book, upon the appellant's recommendation, the court issued Hunt a temporary license good for one year commencing September 18, 1964. It seems to be agreed that Hunt met all the require-

ments for the issuance of a temporary license and that it was properly issued to him.

On July 19, 1965, pursuant to § 15 of the Practice Book, Hunt filed a motion that this temporary license be made permanent. The appellant held a hearing on this motion on September 20, 1965, to determine whether Hunt qualified under § 15 for the granting of his motion for permanent admission to the Connecticut bar. Finally, in early 1966, the appellant filed its report to the Superior Court, finding that Hunt was in all respects qualified for permanent admission to the Connecticut bar without examination except that (1) during the period of his temporary license, he had not devoted the major portion of his time spent in the practice of law to practice in Connecticut, and (2) he did not intend to continue to practice in Connecticut within the requirements for the granting of a permanent license under § 15 of the Practice Book. Thereafter, upon a hearing held on the motion to make the temporary license permanent, the Superior Court, on April 14, 1966, granted Hunt's motion and admitted him to permanent membership in the Connecticut bar.

From this decision the appellant took this appeal. It should perhaps be pointed out that under Connecticut procedure a standing committee on recommendations for admission to the bar exists in each county and is composed of members of the bar who serve without pay and who are appointed by the judges of the Superior Court. The committee assists the Superior Court in investigating the character, fitness and qualifications of candidates for admission to the bar, whether with or without examination. Practice Book §§ 11–15; see cases such as *Heiberger* v. *Clark,* 148 Conn. 177, 182, 169 A.2d

652. Thus, the members of the various standing committees on recommendations for admission to the bar gratuitously perform a valuable service to the Superior Court, to the bar, and to the public. In the instant case, it is clear that the appellant has no ill-will toward Hunt and in taking this appeal is merely urging that we reverse the Superior Court because that court, as the appellant construes the applicable rules and especially § 15, was in error, in the two respects claimed, in deciding that Hunt had shown himself entitled to be permanently admitted on motion without examination.

The two claims really present but one fundamental issue, as clearly stated in the appellant's brief, that is, that Hunt had not, during the period of his temporary license, devoted the major portion of his working time to the practice of law within this state and that he did not intend, if admitted, so to do. The appellant bases this claim on the fact that Hunt has practiced, and, if admitted, intends in the future to practice, almost exclusively as a salaried house counsel for the New Haven, and has neither held himself out to the public of Connecticut as available for general legal employment nor actually engaged in such general employment except to a very limited extent. Admittedly, his only law office facility has been that provided by the New Haven, in New Haven, Connecticut. If admitted, he intends no essential change in his legal activities.

Whether Hunt has complied with the requirements of the rules where, as here, there is no real dispute as to what he has done, or intends to do, is a question of law as to the meaning of the wording of § 15 as applied to Hunt. *In re Application of Warren,* 149 Conn. 266, 273, 178 A.2d 528. It is not, as the appellant claims in its brief, a matter resting in

the appellant's discretion. See cases such as *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 684, 136 A.2d 785.

There is nothing in the wording of § 15, or any other applicable rule, to suggest that a salaried house counsel as a matter of law cannot, as such, be held to be engaged in the practice of law. The appellant seems to claim that, as a matter of public policy, a salaried attorney for a single client could not qualify as being engaged in the practice of law because he would be subject to the control, through the power of discharge, of his one client, and consequently he would be under strong compulsion to do that client's bidding whether in accordance with, or contrary to, applicable standards of ethical legal practice.

We find little merit in this policy claim. In the first place, about the same situation would exist when an attorney in general private practice receives the major portion of his income from a single client, as is sometimes the case.

But the second, and the basic, flaw in the appellant's claim is that it overlooks the real purpose of our rule providing for a temporary license to practice. We think it clear that the basic purpose of the requirement of the temporary license is to provide a year within which are tested, in the practice of law in Connecticut, the attorney's ethical standards, as well as his legal competency. It is that continuity of exposure and testing which is required, whether in the service of one or many clients. Only after the attorney has demonstrated his general fitness during his probationary year, can he be granted a permanent license to practice.

The appellant cannot import into the wording of § 15 a definition of the term "practice of law" which

ipso facto would exclude from the scope of that definition legal work performed on a full-time basis, at a fixed salary and for a single client, whether corporate or individual. In the case of *In re Petition of Jackson,* 95 R.I. 393, 399, 187 A.2d 536, this basic claim of the appellant was considered and rejected.

The appellant seems to have based its view of the law on certain language used in the opinion in *Blaney* v. *Standing Committee,* 129 Conn. 51, 55, 26 A.2d 354. We find nothing in that case inconsistent with the judgment of the trial court in the present case. Blaney, whose home was in Wilton, Connecticut, intended to retain his New York law office, but he wished to be able personally to handle in Connecticut courts whatever Connecticut business he might properly acquire. That case held that the Superior Court was not in error in concluding that Blaney, if permanently admitted, did not intend to practice law in Connecticut within the meaning of what is now § 15 of the rules of practice. In the course of the *Blaney* opinion, we pointed out (p. 56) that for one to intend to practice law in Connecticut it was necessary that he intend, for a substantial portion of his time, "to make his services reasonably available to those in this state who are in need of legal advice". The language was appropriate to that case. But it gives no justification for the appellant's claim that, in order to practice law in Connecticut during the period of the temporary license and thereafter, the licensee must maintain a law office open to the general public of Connecticut and hold himself out as generally available to anyone desiring to employ him. Much less is it authority for the appellant's claim that a salaried, full-time, house counsel in Connecticut cannot, as a matter of law, be considered as engaged in the practice of law in Connecticut.

Hunt, during the period of his temporary admission, had an office in the law department of the New Haven wherein he spent the major portion of his working time, which was largely devoted to matters pending, or which had been originally instituted, before the Interstate Commerce Commission. He also appeared for the New Haven in United States district courts in Connecticut, Maryland and Massachusetts, in the Supreme Court of the United States, and in two cases in the Connecticut Superior Court. We find no justification for a claim that this was not the practice of law in Connecticut.

Because of his full-time employment with the New Haven, Hunt naturally did not have, nor does he expect or intend in the future to have, any considerable time for handling legal matters for other clients, but during the period of his temporary license he did handle, for private clients, a traffic case in the Circuit Court and a change of name proceeding in the Superior Court.

The appellant seems to claim that the legal activities of Hunt during the period of his temporary license did not materially differ from those in which he had engaged immediately prior to his receipt of that license, and that consequently they could not constitute the practice of law, at least in Connecticut. This argument is not persuasive. The appellant seems to agree that Hunt's appearances before the federal administrative agencies and the federal courts, prior to his receipt of the temporary license, were authorized, either by the rules of the agencies involved, or by special permission of the federal courts presumably based on Hunt's membership in the Maryland bar. The mere fact that Hunt could engage in these legal activities without authority from Connecticut does not mean that they did not

constitute the practice of law in Connecticut. These activities were no less the practice of law after Hunt secured his temporary license than they had been before. Indeed, in § 13 of the Practice Book, practice in the federal district courts is quite properly equated with practice in the highest state courts of original jurisdiction.

Nor is it claimed by the appellant that Hunt's office work as house counsel for the New Haven prior to the issuance of the temporary license was illegal, and there is nothing to indicate that it was. See cases such as *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, 146 Conn. 556, 558, 153 A.2d 453. As already pointed out, Hunt did not appear in Connecticut state courts for the New Haven, or for anyone else, prior to the receipt of his temporary license.

It is clear that Hunt, during the period of his temporary license, engaged in the practice of law in Connecticut in conformity with the requirements of § 15 of the Practice Book and that his intention to continue in those activities constitutes an intention to continue to practice law in Connecticut.

There is no error.

In this opinion the other judges concurred.