FAIRFIELD BAR COMMITTEE *v.* LESTER ESTERMAN ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, SPEZIALE and HEALEY, Js.

Argued January 4—decision released April 10, 1978

*William R. Moller,* with whom was *Wesley W. Horton,* for the appellants (defendants).

*Gregory C. Willis,* with whom, on the brief, were *David Bodine* and *Joseph C. Berger,* for the appellee (plaintiff).

House, C. J. The defendants, Lester Esterman and Robert R. Hume, are members of the bar of the state of New York and applied for admission to the Connecticut bar on motion and without examination, pursuant to the provisions of § 13 of the Connecticut Practice Book. Their applications were referred to the Fairfield County standing committee on recommendations for admission to the bar (hereinafter referred to as the committee) in accordance with the provisions of § 11 of the Practice Book. The relevant portions of that section provide that "[a]ll applications for admission to the bar shall be referred to the committee of the county where the application is filed, which shall investigate the general fitness of each applicant and report to the bar of the county whether he has complied with the rules relating to admission to the bar, is a person of good character and should be admitted." The committee conducted an investigation and interviewed each of the applicants on June 14, 1976. Subsequently, on June 25, 1976, the committee filed its report to the members of the bar of Fairfield County. In the case of each applicant, the committee reported that the applicant "could not state that he intends, upon a continuing basis, to actively practice law in this state and to devote the major portion of his working time to the practice of law in this state." Also, in each case the committee recommended the passage of a resolution that the applicant be denied admission to the Connecticut bar without examination and on a temporary license. On July 16, 1976, the committee filed a further report in which it recited that since its June 25 report it had learned

that the yellow pages of the Stamford telephone directory already listed the names of the applicants under the listing of "Attorneys" with the same Stamford address and telephone number as that listed under "Attorneys" for "Hart & Hume" which was the law firm located in New York City in which both applicants were partners. The committee reported that this action of the applicants was a violation of the Code of Professional Responsibility (Practice Book, pp. 1–50) and was "incompatible with the requirements of section 13, subsection 1, of the Rules of the Superior Court" which requires that an applicant for admission to the bar without examination satisfy the appropriate standing committee on recommendations for admission to the bar that "(1) he is of good moral character."

The reports to the Fairfield County bar were presented in open court on July 16, 1976, the motions to deny the applications were voted and the reports were filed with the court. After hearings before it, the court accepted the reports denying both applications for admission to the bar without examination on temporary licenses and the present appeal was taken by the defendants from that judgment.

Before discussing the merits of the appeal, it is pertinent to refer to the prescribed procedures governing the admission to the Connecticut bar without examination of members of the bar of other jurisdictions. "Proceedings for admission of attorneys to practice law in our courts are not actions or suits at law but are in the nature of investigations by the court or their representatives to determine whether the particular candidate is qualified to become an officer of the courts. *Heiberger* v. *Clark*, 148 Conn. 177, 182, 169 A.2d 652; *In re Application*

*of Dodd,* 131 Conn. 702, 707, 42 A.2d 36; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 415, 165 A. 211. The end result of the proceedings is in the nature of a judgment from which an appeal lies to this court. *Heiberger* v. *Clark,* supra, 183; *In re Application of Dodd,* supra, 707; *O'Brien's Petition,* 79 Conn. 46, 59, 63 A. 777." *In re Application of Courtney,* 162 Conn. 518, 521, 294 A.2d 569. " 'Fixing the qualifications for, as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power.' *Heiberger* v. *Clark,* 148 Conn. 177, 185, 169 A.2d 652, and cases cited. This power has been exercised with the assistance of committees of the bar appointed and acting under rules of court. Practice Book [§§ 2 to 15A]; *Heiberger* v. *Clark,* supra, 186; *State ex rel. Bazil* v. *Boardman,* 127 Conn. 475, 477, 18 A.2d 370; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 415, 165 A. 211. Although these committees have a broad power of discretion, they act under the court's supervision. *In re Application of Dodd,* 132 Conn. 237, 244, 43 A.2d 224; see *Grievance Committee* v. *Broder,* 112 Conn. 263, 265, 152 A. 292. It is the court, and not the bar, or a committee, which takes the final and decisive action. *Heiberger* v. *Clark,* supra, 183, and cases cited therein." *In re Application of Warren,* 149 Conn. 266, 272, 178 A.2d 528.

The procedure prescribed by the court for admission without examination to the bar of this state by members of the bar of other jurisdictions is a two-step process. The first step leads to a temporary license for a period of one year. Practice Book § 14. After the expiration of that year, the applicant may move to make that license permanent by giving notice to the standing committee on recommenda-

tions for admission which committee then claims the motion for hearing as soon as it is prepared to make recommendations thereon to the court. If at such hearing the court determines that the applicant "has, since his admission, resided and devoted the major portion of his working time to the practice of the law in the state of Connecticut and intends to continue so to reside and practice, and that his moral qualifications remain satisfactory, such license shall be made permanent." Practice Book § 15.

The present case involves the first step of this procedure leading to a temporary license. The requirements are delineated in § 13. It is unnecessary to refer to all its details. Basically, § 13 provides that a member of the bar of another jurisdiction who has satisfied the Connecticut bar examining committee that his educational qualifications are such as would entitle him to take the bar examination in this state or would have entitled him to take it at the time of his admission to the bar of which he is a member and who "shall satisfy the appropriate standing committee on recommendations for admission" that he meets several other enumerated requirements, may be admitted by the court to the bar on a temporary one-year basis. One of the enumerated requirements is that the applicant satisfy the committee on recommendations for admission that "(1) he is of good moral character." Another is that he satisfy the committee that he "(5) intends, upon a continuing basis, to actively practice law in this state and to devote the major portion of his working time to the practice of the law in this state."

As we have noted, in the present case the standing committee on recommendations for admission found and reported to the bar and the court that the

applicants had not satisfied the committee that they met both of these two requirements. The acceptance of this report by the court—the judgment from which the present appeal was taken—effectively barred the applicants from admission to the bar on a temporary license.

We consider first the requirement that each of the applicants satisfy the standing committee on recommendations for admission that he intends not only "upon a continuing basis, to actively practice law in this state" but also intends "to devote the major portion of his working time to the practice of the law in this state." Practice Book § 13 (5). A determination as to the existence of this intent was "a matter properly within the jurisdiction of the county standing committee on recommendations for admissions." *In re Application of Slade,* 169 Conn. 677, 682, 363 A.2d 1099. It was "a specific, concrete condition precedent to the admission of the applicant without examination." *In re Application of Slade,* supra; *In re Application of Dodd,* 132 Conn. 237, 245, 43 A.2d 224.

The hearing on the court's acceptance of the report of the committee was properly limited to a determination as to whether the committee had acted fairly, reasonably, without prejudice, and after a fair investigation of the facts. *In re Application of Warren,* 149 Conn. 266, 273, 178 A.2d 528; *Higgins* v. *Hartford County Bar Assn.,* 111 Conn. 47, 51, 149 A. 415; *O'Brien's Petition,* 79 Conn. 46, 55, 63 A. 777. In the case of *In re Application of Warren,* supra, we discussed at some length the function of the court in a hearing such as that conducted in this case. We noted that the hearing is not one de novo but one in which the court reviews the bar committee's decision on the record of its pro-

ceedings. We concluded our discussion with the observation: "In summary, we state that where a recommendation of a standing committee on recommendations for admission to the bar is challenged, the court should have before it not only the report of the committee but also an adequate record of its proceedings." *In re Application of Warren,* supra, 275. We further observed that such a record "may be the application submitted, with supporting documents, and a stenographic transcript of the proceedings of the committee or, if there is no transcript, a summary of the committee's doings in sufficient detail to show the facts developed by the committee, that the applicant had a full opportunity to explain or refute those adverse to him, and his explanation or refutation. The court can then determine whether the committee has acted after a fair investigation and hearing and has exercised its discretion reasonably and without prejudice." Id., p. 276.

In the present case, there was neither a transcript of the proceedings of the committee nor any record of its doings in sufficient detail to show the facts developed by the committee. In lieu of a transcript of the proceedings and what was said by the applicants as to their intention to practice in Connecticut, the court had for consideration only the recollections of the two applicants and the recollections of two members of the committee, supplemented by the personal notes of the chairman. It was the recollection of the two members of the committee that neither of the two applicants could say that he would spend more than one-half of his time on the practice of law in Connecticut. On the other hand, the applicant Hume testified that he did not state to the committee that he would not devote the major portion of his working time to practice in Connecticut and that,

in fact, he would devote the major part of his working time to practice in Connecticut. The applicant Esterman testified that he told the committee that "he would practice law the majority of his time in Connecticut."

The conclusion of the standing committee that the applicants had failed to satisfy the committee that they were of good moral character appears to have been predicated upon information obtained by the committee subsequent to the filing of its first report. In a supplemental report, the committee reported that it had learned that the names of the applicants and of their New York law firm appeared in the yellow pages of the Stamford telephone directory, dated February 6, 1976, under the heading of "Attorneys" and that in the opinion of the committee such a listing while action on the applications was pending was a violation of the Code of Professional Responsibility. While this supplemental report properly recites in detail "the facts developed by the committee" with respect to its investigation as to the appearance of those listings, there is nothing whatsoever by way of a transcript or summary to show with respect to those facts that, in the language of *In re Application of Warren,* supra, "the applicant had a full opportunity to explain or refute those adverse to him, and his explanation or refutation."

The circumstances giving rise to this appeal make abundantly clear the reasons why this court spelled out in *In re Application of Warren* the necessity for a transcript or other adequate record of the proceedings of a standing committee in order to permit a fair and proper review of its proceedings when a decision of a standing committee is challenged on an appeal to the Superior Court.

In no way do we impugn the industry and integrity of the members of the Fairfield County standing committee who, in responding to the call of the court, perform a difficult and time-consuming task of great assistance to both the bench and the bar, nor do we, by this decision, in any way pass judgment on the merits of the applications involved. We limit our decision to the conclusion that in fairness to everyone concerned the trial court did not have before it a record adequate for it to determine whether the committee had acted in a fair and reasonable manner, without prejudice and after a fair investigation of the facts.

There is error, the case is remanded to the Superior Court with direction to remand the matter to the standing committee for a new investigation and report on each of the applications.

In this opinion the other judges concurred.