RYSZARD S. MROTEK *v.* HARRY L. NAIR, CHAIRMAN,
STATE BAR EXAMINING COMMITTEE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 14-663-21623

Argued January 9—decided February 9, 1967

*Ryszard S. Mrotek,* of Hartford, pro se, the
appellant (plaintiff).

*Harry L. Nair,* of Hartford, pro se, the appellee
(defendant).

DEARINGTON, J. The plaintiff took the examination for admission to the bar on three occasions and on each occasion failed to pass. Following each failure, he sought the permission of the bar examining committee to inspect and copy his percentage score, his numerical score for each examination hour, official records of the score earned for each question in the examination, and the records, correspondence, comments and notations which related to his examination together with the minutes of committee meetings at which rules and regulations authorizing secrecy were adopted in reference to the information sought. His requests having been denied by the committee on each occasion, he now claims to be an aggrieved person under the provisions of §§ 1-19, 1-20 and 1-21 of the General Statutes[1] and seeks an order from the Circuit Court requiring the committee to permit him to inspect and copy the information sought.

---

[1] "Sec. 1-19. ACCESS TO PUBLIC RECORDS. Except as otherwise provided by any federal or state statute or regulation, all records made, maintained or kept on file by any executive, administrative, legislative or judicial body, agency, commission or official of the state, or any political subdivision thereof, whether or not such records are required by any law or by any rule or regulation, shall be public records and every resident of the state shall have the right to inspect or copy such records at such reasonable time as may be determined by the custodian thereof. Each such executive, administrative, legislative and judicial body, agency, commission or official shall keep and maintain all public records in his custody at his regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such body, agency, commission or official shall be kept in the office of the town clerk or the secretary of the state, as the case may be." (Public Acts 1957, No. 428 § 1, as amended by Public Acts 1963, No. 260 [addition of last sentence].)

"Sec. 1-20. REFUSAL OF ACCESS. APPEAL. Notwithstanding the provisions of section 1-19, the body, agency, commission or official who has custody or control of any such public record shall refuse permission to so inspect or copy such record or records if such inspection or copying would adversely affect the public security or the financial interests of the state or any of its political subdivisions or if such denial is necessary to provide reasonable protection to

The defendant, chairman of the state bar examining committee, in his motion to erase for lack of jurisdiction alleged that the committee was an arm of the Superior Court and as such was subject only to the rules, orders and directions of that court and therefore the Circuit Court was without jurisdiction. He further claimed that §§ 1-19, 1-20, and 1-21 are not applicable to the bar examining committee, nor to its officers in the performance of their duties, and that an application of the statutes in this matter would violate article second of the Connecticut constitution of 1965, which provides for the separation of the legislative, executive and judicial powers of government. He further claimed that the order sought by the plaintiff violates article

the reputation or character of any person. Any such denial of such right of inspection shall be made to such resident, in writing, generally stating the reason therefor within fifteen days of the request for such inspection. Any person aggrieved by such denial may appeal therefrom, within fifteen days, to the circuit court for the circuit wherein such body, agency, commission or official is located. If such court, after a trial de novo, determines such denial was not for just and proper cause, it shall enter such order for disclosure as it deems proper. Such appeals shall be privileged in respect to their assignment for trial over all other actions except writs of habeas corpus and actions brought by or on behalf of the state, including informations on the relation of private individuals. Nothing in this section shall deprive any person of any rights he may have had at common law prior to January 1, 1958." (Public Acts 1957, No. 428 §§ 2, 3; Public Acts 1961, No. 521 [the 1961 act specified the time within which denial of access must be made, changed jurisdiction of appeals from the Court of Common Pleas to the Circuit Court, made entry of order by court mandatory, and added last two sentences].)

"Sec. 1-21. MEETINGS OF GOVERNMENTAL AGENCIES TO BE PUBLIC. RECORDING OF VOTES. The meetings of all administrative and executive boards, commissions, agencies, bureaus, committees and other bodies of the state or any of its political subdivisions shall be open to the public when in session and shall be open to the public when in executive session when so voted by a majority of the members of such body present and voting. The votes of each member of any such body upon any issue before such body shall be recorded in the minutes of the session at which taken, which record shall be available for public inspection at all reasonable times." (Public Acts 1957, No. 468 § 1.)

fifth, § 1, of this constitution with respect to the vesting of judicial power.

The trial court, in granting the motion to erase, noted that § 1-20 provides that the Circuit Court shall determine whether a denial of permission to inspect public records is for just and proper cause. The court held, however, that the test was whether on the face of the records the Circuit Court had jurisdiction; that is, does the Circuit Court under the "right to know" statutes have jurisdiction over the proceedings of a committee which is an instrumentality or arm of the Superior Court? The court reasoned that the Superior Court is, in contrast to the Circuit Court, a constitutionally established tribunal and that it has been long recognized that the Superior Court has the sole and exclusive power to admit persons to the bar and to regulate the conduct and discipline of its members. The trial court concluded that the General Assembly did not intend "that an inferior court, such as the Circuit Court, under the 'right to know' statute was privileged to order the Superior Court or its state bar examining committee to comply with any directive issued by the Circuit Court."

The only question of law presented by this appeal is the correctness of the trial court's ruling in granting the motion to erase from the docket for lack of jurisdiction. A motion to erase will lie for want of jurisdiction which appears plainly on the face of the record. *Ragali* v. *Holmes,* 111 Conn. 663, 664. The motion reaches only defects appearing on the face of the record. When want of jurisdiction appears on the record, such a motion is better procedure than a plea in abatement. *Felletter* v. *Thompson,* 133 Conn. 277, 279; *Smith* v. *Smith,* 150 Conn. 15, 23. The granting of a motion to erase is a final adjudication from which an appeal lies to this court. *Norton* v. *Shore Line Electric Ry. Co.,*

84 Conn. 24, 31. No finding is necessary, and none was made. Practice Book § 957; Maltbie, Conn. App. Proc. § 126. A motion to erase admits all well-pleaded facts and serves the same purpose as a demurrer, except that, unlike the sustaining of a demurrer, the sustaining of a motion to erase is a final judgment. *Park Construction Co.* v. *Knapp*, 150 Conn. 588, 592. "In passing upon a motion to erase, the allegations of the complaint should be given such construction as is most favorable to the plaintiffs. . . . Every presumption which favors the jurisdiction of the court should be indulged." *Fairfield Lumber & Supply Co.* v. *Herman*, 139 Conn. 141, 144.

Error is assigned by the plaintiff in that jurisdiction of the Circuit Court is apparent on the face of the record; such jurisdiction does not interfere with the Superior Court's power to admit attorneys; the legislature may regulate certain activities of the state bar examining committee within the framework of the separation of the powers requirement of article second of the Connecticut constitution; there is no legislative intent to bar the committee from the operation of the "right to know" statutes; the trial court exceeded its constitutional mandate in purporting to legislate; and the information sought is in the interest of the public. The plaintiff does not question the power of the Superior Court, acting by its examining committee, to determine the qualifications of candidates for the office of attorney. He concedes, as he must, that this power was lawfully delegated and properly exercised. His claim is that he has the right under the provisions of § 1-19 to inspect the material sought. The defendant's reply to such pleadings appears in his motion to erase, which has been heretofore set forth.

The power of the Superior Court to make rules governing its bar examining committee has never

been seriously questioned. The provisions of § 51-80,[2] relating to the rule-making power of the Superior Court, can be construed only as a legislative recognition of the inherent right of that court, a constitutionally established tribunal, to promulgate rules respecting the functions of the bar examining committee. "It should be borne in mind that no judicial power is vested by the constitution in the General Assembly, either directly or as an incident of the legislative power, and the General Assembly cannot confer it." *Brown* v. *O'Connell,* 36 Conn. 432, 446; *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 231. To that end article second of the constitution of Connecticut provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Article fifth, § 1, provides in part: "The judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish." The division of the powers of government has been an integral part of our constitution from 1818. Article second of the constitution of 1818 is identical with article second of the constitution of 1965; so, too, as to article fifth, § 1. Thus, the judicial power is vested in the courts as "a separate magistracy."

In *O'Brien's Petition,* 79 Conn. 46, 49, Justice Baldwin, in a scholarly review of this subject, traces the history of law and procedure since 1708. The

---

[2] "Sec. 51-80. ADMISSION. The superior court may admit and cause to be sworn as attorneys such persons as are qualified therefor, agreeably to the rules established by the judges of said court, and said judges may establish rules relative to the admission, qualifications, practice and removal of attorneys."

first legislation in this regard was in 1708, when it was provided that admission to the bar be controlled by county courts. In 1808, such authority was extended to include the Superior Court. By the revision of 1821, such power was again committed exclusively to the county court and remained with it until 1855, when jurisdiction over the admission of attorneys was given exclusively to the Superior Court, where it has since remained. Shortly after the organization of the state bar association in 1875, it reported in favor of the appointment of a state bar examining committee. On this report, adopted by the association in 1881, the rules of court now in force on admissions were based. See *In re Hall,* 50 Conn. 131, 134; *Rosenthal* v. *State Bar Examining Committee,* 116 Conn. 409, 413; *Heiberger* v. *Clark,* 148 Conn. 177, 188. In *O'Brien's Petition,* supra, 52, Justice Baldwin, in outlining our procedure on admission to the bar, said that our practice is in accord with the ancient practice of England, where voluntary societies were formed for the purpose of legal education, each having its own inn and its own system of government. "Even if one of these societies for the education of barristers should refuse to give to one of its members a call to the bar, although giving him no information as to the reasons, or without reasons, he had no remedy by mandamus or otherwise, before the courts." Ibid. He could only appeal to twelve judges, in their capacity, established by ancient usage, of visitors of each of the inns of court. They constituted a domestic forum of final authority.

While our procedure is not identical with that of England, the fundamental idea still remains that the bar examining committee, acting in accordance with the powers entrusted to it, acts solely under the jurisdiction of the Superior Court. Practice Book §§ 4, 5; *Rosenthal* v. *State Bar Examining*

*Committee,* supra, 417; *In Re Application of Dodd,*
132 Conn. 237, 241. "The great weight of authority
elsewhere accords with this principle." *Heiberger*
v. *Clark,* supra, 185, and cases cited; 7 Am. Jur. 2d,
Attorneys at Law, § 2. While statutes have been
passed to aid the judicial department of each state
in the admission of attorneys to practice in the
courts, no statute can control the judicial depart-
ment; the rule-making power is in the Superior
Court. *Heiberger* v. *Clark,* supra; *State Bar Assn.*
v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 232.
In the instances where legislatures act under the
police power, they act in aid of the judiciary and in
so doing do not supersede or detract from the power
of the court. 7 Am. Jur. 2d, Attorneys at Law, § 2.

We now consider the legislative intent and the
application of the statutes under review. " 'The
statute law is the will of the legislature; and the
object of all judicial interpretation of it is to deter-
mine what intention is conveyed, either expressly
or by implication, by the language used, so far as it
is necessary for determining whether the particular
case or state of facts presented to the interpreter
falls within it.' . . . 'The intent is the vital part,
the essence of the law, and the primary rule of con-
struction is to ascertain and give effect to that
intent.' " *Kelly* v. *Dewey,* 111 Conn. 281, 284. The
legislature, by the insertion of a limitation clause in
§ 1-19, clearly indicated an intent to exclude from
its operation any state statute or regulation which
contained a provision inimical to its application.
Since the "right to know" statutes embrace the same
subject matter, they must be construed together, for
the intention of the whole act controls the interpre-
tation of all its parts. *Kelly* v. *Dewey,* supra, 286.
The relative position of the exception clause appear-
ing in § 1-19 is unimportant, for the clause has the
same effect or meaning as if it was also incorpo-

rated in § 1-20. 50 Am. Jur., Statutes, § 431. "The legislature is always presumed to know all the existing statutes, and to have in mind the effect its action or non-action will produce." *State ex rel. Judson* v. *County Commissioners,* 68 Conn. 16, 23; *Coombs* v. *Darling,* 116 Conn. 643, 646. Rules established by the judges of the Superior Court under the provisions of § 51-80 have the force of statute. *In re Application of Dodd,* supra.

In view of the foregoing, it must be presumed that the legislature had in mind that § 51-80 vested the exclusive power to establish rules relative to or arising out of admission to the bar in the Superior Court. The "right to know" statutes were originally passed at the 1957 session, whereas § 51-80 has been the law at least since 1875. Rev. 1875, p. 44, § 29. It follows, therefore, that the legislature, by incorporating an exception clause in the "right to know" statutes, intended to exclude from the jurisdiction of the Circuit Court the matters which the legislature had previously vested exclusively within the jurisdiction of the Superior Court. Moreover, we must presume not only that the legislature, in enacting the 1957 legislation, acted with existing relevant statutes in mind but that it also acted with the intention of creating a consistent body of law. *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347.

The trial court committed no error in granting the motion to erase from the docket for lack of jurisdiction. The plaintiff is not without a right to be heard on his complaint, for such a right may be exercised by a petition to the Superior Court.

There is no error.

In this opinion PRUYN and KINMONTH, Js., concurred.