291 A.2d 632.

IN RE APPLICATION OF CHARLES R. CAPACE.

JUNE 21, 1972.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This petition seeks a reversal of a decision of the Board of Bar Examiners which refused to recommend the admission of Charles R. Capace to the practice of law in this state.

The petitioner is 26 years old. He is a graduate of Brown University and Boston College Law School. In August, 1970, he filed with the clerk of this court an application to take the bar examination[1] that was scheduled to be held late in the following month. At that time, he was employed by Rhode Island Legal Services, Inc. Sometime in mid-September, he appeared before the board to present the academic credentials which would verify his college and law school accomplishments. On this occasion, the board noted that in 1967 Capace had taken the Law School Aptitude Test twice—once in February and again in April. The petitioner was asked if he personally had taken the test each time it had been given. Capace gave an affirmative reply. The board then revealed that it had information which purported to show that a Brown classmate of

---

[1]Capace passed the examination.

Capace, Sullivan by name, had taken the second L.S.A.T. The petitioner was told that he could take the examination but that the matter of the second L.S.A.T. would be further investigated. Subsequently, on October 30, 1970, petitioner conferred with the chairman of the board and authorized the testing service to release the test papers to the board. On this occasion he once again declared that he had taken the second L.S.A.T.

Later, in November, he filed a petition in which he alleged that the September statements he gave the board were the result of his having been "ambushed" because the examiners had failed to afford him procedural due process. Capace also stated that if the board had given him adequate notice of the charge made against him, he would have informed the board that, after applying for the second L.S.A.T., he received an unconditional promise from an official at Boston College Law School that he would be a member of the incoming freshman class. Consequently, he permitted his classmate Sullivan to make use of the second application merely to afford Sullivan an opportunity to see how he would fare on the test. Apparently, Sullivan's forte was the objective type test such as the L.S.A.T.[2]

On March 22, 1971, the board held an extensive hearing relative to the circumstances and the events surrounding the two tests. The board at this time was composed of three members. The member who had initially received the information about Sullivan and the second test disqualified himself from considering the character aspect of Capace's application. The fifth member did not participate because Capace had consulted with him on this matter prior to the examiner's appointment to the board.

The petitioner was represented by counsel. Evidence was adduced which sought to show that Capace's applica-

[2]Capace scored 381 on the first L.S.A.T. Sullivan scored 584.

tion for the second L.S.A.T. had invoked a needless expenditure of money because of the assistant dean of the law school's assurance to Capace concerning the fall freshman class. The assistant dean of the Boston College Law School appeared and answered questions as to his contact with Capace during the time his application for admittance was pending at that institution. Other witnesses testified as to petitioner's good character.

At the time of the March hearing, Sullivan was on active duty with the army in Vietnam. The board filed a decision in August, 1971, in which it referred to a certain portion of the dean's testimony and then went on to say that it did not believe Capace had been guaranteed a spot in the class of '70. It also expressed regret that it had not been able to hear Sullivan's version of what had transpired in the spring of 1970. The board, however, did comment adversely on petitioner's credibility. It then declared that, because of the false statements made by Capace in September and October, 1970, it did not consider that he possessed the type of character which must be demonstrated by an applicant who wishes to practice law. This petition was filed as a result of that decision.

When the appeal was pending before us, we were informed that Sullivan had returned to the United States. In January, we entered an order remanding the case to the board with a direction to reopen the case for the purpose of taking Sullivan's testimony and a redetermination of Capace's fitness in the light of that testimony. *In re Capace*, 109 R. I. 940, 284 A.2d 597 (1972). Sullivan, now a resident of New York, appeared before the board in March, 1972. He told the board that he had taken the second L.S.A.T. at the request of Capace because of Capace's concern about his being admitted to Boston College plus his desire for admittance to the law school at Cornell University. Sullivan agreed that he had looked

upon the test as a challenge to match his past successes but he also maintained that he submitted to the daylong examination in an effort to help Capace. This witness conceded that in 1967 he had told an attorney for a classmate charged with the possession of marijuana of his involvement with Capace and the second L.S.A.T. because he wished to discredit Capace who, he thought, would testify as a witness for the prosecution. This attorney subsequently became a member of the Board of Bar Examiners and, as noted earlier, he disqualified himself from considering the character aspect of Capace's application.

The board, in its reevaluation of Capace's application for admission to the bar, classified Sullivan as a "frank, candid and honest witness." It found that Sullivan took the second L.S.A.T. at the instigation of Capace to improve his chances of gaining admittance to a law school. The board observed that, although there was ill feeling between Capace and Sullivan, because of the marijuana incident, this strained relationship did not color or influence Sullivan's testimony. The board concluded its redetermination by declaring "that as a result of the persistent prevarications and false statements of the applicant, Charles R. Capace, made before agents and representatives of the Supreme Court during our inquiry into his character and qualifications, we cannot consider this young man of suitable character and fitness for recommendation for admission to the Bar."

Capace's claim that he was "ambushed" by the board fades in the light of the record. At the mid-September, 1970 meeting, it informed Capace as to the nature of its information, its source and told Capace that this phase of his application would be investigated after the written examination had been held. He was advised to seek counsel. At subsequent hearings conducted by the board his counsel was present. Sullivan appeared and was cross-

examined. The differing versions of what prompted Sullivan to take the second L.S.A.T. presented a question of fact which the board resolved against Capace. It was his burden to satisfy the examiners that he had the required intellectual and moral characteristics which would warrant his admission.

The issue before us is whether we shall overturn the board's action in refusing to move the admission of Capace because it either abused its discretion or its decision is clearly wrong. *Petition of Vetelino*, 108 R. I. 933-34, 277 A.2d 312 (1971). We see no abuse of discretion nor can we fault the board's findings of fact. A knowing disregard of the truth shows a lack of good moral character required of an individual who seeks to practice law. *Greene* v. *Committee of Bar Examiners*, 4 Cal.3d 189, 480 P.2d 976 (1971).

An attorney is an officer of the court. He is charged with the preservation of the property, liberty and, at times, the life of his client. Such a responsibility requires not only a high degree of intelligence but an attorney or an applicant who seeks admission to the bar must also possess integrity of character in his private and professional conduct. *Heiberger* v. *Clark*, 148 Conn. 177, 169 A.2d 652 (1961). The board's investigation of a candidate's character, like its inquiry as to his knowledge of the law, is but one facet of its determination of an applicant's fitness to practice the profession. Veracity is a quality that must be employed by an attorney at all times. Truth, even though it may hurt at times, is to be demanded and expected of all who seek the board's endorsement. Its endorsement and our acceptance thereof constitute a representation to the public that the candidate is an advocate who possesses the knowledge and character which should make him a distinguished and respected member of the bar. The record contains evidence which warranted the board's action.

In affirming the examiners' refusal to endorse Capace's candidacy, we wish to emphasize that our action here is not intended to be a perpetual prohibition against the petitioner having his application reconsidered by the board.[3] There is no question that the petitioner has shown the board that he possesses the intellectual ability and technical skills which would justify his admission to the bar.

One of the primary goals in considering a petition, such as the one presently before us or a petition to be reinstated to practice, is our concern that the public be protected by our insistence that members of the legal profession maintain a high professional standard. This regard for the public interest will not, however, foreclose the attainment of another goal which is usually associated with the judicial system—the rehabilitation of an individual who has failed to adhere to a prescribed course of conduct.

Accordingly, with rehabilitation as our guiding light, we see no necessity for Capace to file a new application to take the bar examination. Rather, we direct the board to defer any further consideration of his pending application until July 1, 1973 at which time he can appear before the examiners and then attempt to convince them that he has been rehabilitated and stands ready to abide by the high standards of propriety and honor which are expected of all attorneys who practice before the courts of this state.

His petition is denied and dismissed.

ROBERTS, C. J., did not participate.

*Guy J. Wells*, for petitioner.

*James H. Barnett*, representing public's interest; *Arthur H. Feiner*, Chairman, *Alfred B. Stapleton, Francis A. Monti*, representing Board of Bar Examiners.

---

[3]Rule 1 of our rules governing the admission of persons to the practice of law specifically states that a candidate can take the bar examination three times. Any further attempts can only be made by special permission of this court.