**In re Alfred TESTA, Jr.**

**No. 83–592–M.P.**

Supreme Court of Rhode Island.

March 19, 1985.

Lynette J. Labinger, Providence, for petitioner.

## OPINION

### PER CURIAM.

This petition seeks implementation of a decision of the Rhode Island Board of Bar Examiners (bar examiners or examiners) recommending the admission of Alfred Testa, Jr., to the practice of law in this state.

The facts in this case are complicated by the involvement of three members of the same family. Alfred Testa, Sr., is the father of Robert Testa and Alfred Testa, Jr.

Robert Testa is a member of the Rhode Island Bar whose actions were investigated by the Disciplinary Board of this court. That investigation initially led to the transfer of Robert Testa to inactive status as a member of the bar on October 29, 1982, for health reasons. He petitioned for reinstatement on April 11, 1983, and in compliance with an order of this court issued June 30, 1983, formal hearings were held before the Disciplinary Board of the Rhode Island Supreme Court (the board) on various dates from September 14, 1982, through November 8, 1983. The recommendation of the board is currently before this court for review.[1]

The board's investigation also uncovered possible wrongdoing on the part of Alfred Testa, Jr., the subject of this petition. Although petitioner was not an attorney at the time of the board's investigation of his brother, Robert, evidence presented to the board became relevant to petitioner's current application to become a member of the bar. The facts surrounding the investigation are as follows.

Pursuant to a complaint filed with Frank A. Carter, Jr. (Carter), chief disciplinary counsel of the board, by Robert and Linda Fischer (Fischers), an investigation was made into alleged wrongdoing by Robert Testa. The board's investigation centered on a promissory note purportedly executed by the Fischers in exchange for a loan from Alfred Testa, Sr., in the amount of $30,000 and payable to Alfred Testa (presumably Alfred Testa, Sr.).

On November 12, 1981, the Fischers received a letter in the mail from the law offices of Testa & Pezza. The letter contained a copy of a promissory note bearing what purported to be the signatures of the Fischers. They had not actually signed the note and were totally unaware of the transaction. Edward D'Agostino, an attorney with Testa & Pezza, looked into the matter for the Fischers. As a result of this in-

quiry Robert Testa communicated to the Fischers that he had prepared the note for the purpose of obtaining money for his brother, Alfred Testa, Jr., whose auto body repair business, Tabco, Inc., was in financial trouble. The Fischers then contacted their attorney and filed a complaint with the chief disciplinary counsel against Robert Testa.

The board's investigation into the matter, headed by Melvin Zurier, Esq. (Zurier), assistant disciplinary counsel, and Carter, included an examination of an affidavit apparently executed by Alfred Testa, Jr., and submitted to the board by or on behalf of Robert Testa in response to the Fischers' complaint. This sworn affidavit was dated December 29, 1981, and set forth the following:

"I, Alfred Testa, Jr. of the Town of Narragansett, County of Washington, State of Rhode Island, do hereby make Affidavit and say as follows:

"That on or about May 2, 1979, I was involved in a business and was in desparate [sic] need of a loan. My father and I were not getting along at that time and I could not approach him for the money.

"I went to my father and informed him that I had a customer that wanted to borrow money and he gave me the necessary breakdown for the loan.

"I then went to my brother's office and one of the secretaries typed up the papers at my request and I signed all the signatures necessary myself.

"At no time did my brother, Robert Testa, Esquire have any knowledge of any of the within mentioned transactions.

"I swear that the within stated facts are true."

In a subsequent interview conducted on May 3, 1982, by Carter and Zurier, Alfred Testa, Jr., was questioned about his involvement in the falsification of the promissory note. At that time, Alfred stated that his business had been having financial diffi-

---

**1.** The Board of Bar Examiners and the Disciplinary Board are two completely separate agencies. Reference to Disciplinary Board proceed-

ings concerning Robert Testa are made only as part of the factual context relating to Alfred Testa, Jr.

culties and that in order to get a loan from his father, Alfred Testa, Sr., he had represented to his father that the Fischers wished to borrow $30,000 in exchange for a mortgage on their home. Alfred acknowledged to Zurier and Carter that the Fischers had not actually been involved in the transaction and that he was responsible for the promissory note. He was also questioned about the December 29, 1981 affidavit and in response to inquiries from Carter and Zurier indicated that he had prepared the affidavit as well. Subsequent to this investigation, the chief disciplinary counsel of the board filed a formal petition for disciplinary action against Robert Testa.

The petitioner, Alfred Testa, Jr., graduated from an accredited law school in May of 1982 and applied to take the Rhode Island Bar Examination in July of 1982. Despite the fact that Alfred successfully completed the examination, his name did not appear on the list of successful candidates published in the fall of 1982. Rather, petitioner was directed to appear on October 4, 1982, for a hearing before the bar examiners. At that hearing, and at all subsequent hearings before the examiners, Alfred Testa, Jr., denied having prepared and signed the affidavit and denied having signed the Fischers' names to the promissory note. In light of this and other testimony, as well as assertions made by a handwriting expert that the signatures had not been written by Alfred Testa, Jr., the bar examiners, on April 7, 1983, recommended petitioner's admission to the bar.

On October 20, 1983, this court heard testimony regarding the application of Alfred Testa, Jr., for admission to the bar. During that hearing, Mr. Testa admitted to having lied to Carter and Zurier during the board's initial investigation and stated that he had done so in order to protect his brother, Robert Testa. Alfred Testa, Jr., persisted in his denial that he prepared and signed the affidavit. He also denied that he had signed the Fischers' names to the promissory note. In addition, he admitted to having backdated guarantees signed by himself, his business partner, Manuel Da-

Silva, and Tabco, Inc. The guarantees, dated May 3, 1979, had allegedly been executed subsequent to the Fischers' discovery on November 12, 1981, of the promissory note bearing their signatures. Alfred stated that the guarantees had been executed and backdated in order to incur liability on the part of himself, his partner, and Tabco, Inc., and to avoid liability on the part of the Fischers. After hearing this testimony, we remanded the matter to the bar examiners to reconsider their recommendation and to elicit further evidence if necessary.

In accordance with the order of this court, dated March 22, 1984, the bar examiners reviewed the transcripts of testimony regarding Alfred Testa, Jr., and heard additional testimony on behalf of petitioner. Following its review, the bar examiners made the following findings of fact:

"1. That the applicant [Alfred Testa, Jr.] intentionally made false statements to the representatives of the Supreme Court Disciplinary Counsel's office.

"2. That at the time said false statements were made the applicant was not testifying under oath.

"3. That the names of Robert and Linda Fischer purporting to be their signatures on the promissory note dated May 2, 1979, were signed by someone other than themselves and without their knowledge.

"4. That the applicant intentionally back dated three documents purporting to be guarantees to protect Mr. and Mrs. Fischer from liability on the bogus promissory note.

"5. That the Fischers have suffered no financial damage as a result of the issuance of said note.

"6. That the applicant denies that he signed an affidavit dated December 29, 1981, in which it is stated 'I signed all the signatures necessary myself.'

"7. Sharon A. McLeod [a secretary in Robert Testa's office] denies that she signed said affidavit as a Notary Public."

The bar examiners then stated that petitioner or his brother, Robert Testa, or both

had been less than candid regarding the origins of the affidavit and the promissory note. The bar examiners stated that although lying to protect a family member was laudable, it "cannot be condoned, especially on the part of one who seeks to become an officer of this Court." The bar examiners concluded that even though "[s]ome person or persons involved in this scheme wrote these signatures * * * the [bar examiners have] been unable to uncover any credible evidence to pinpoint the source." The examiners concluded by recommending Alfred Testa, Jr.'s admission to the bar.[2]

In light of the examiners' findings, petitioner was ordered to file a brief setting forth the reasons why this court should follow the examiners' recommendation. This court then heard oral argument in this matter on December 13, 1984.

 The issue before us is whether we shall adopt the recommendation of the examiners to admit Alfred Testa, Jr., to the practice of law in Rhode Island. Preliminarily, we observe that one of the duties of the examiners is to investigate possible wrongdoing by applicants for admission to the Rhode Island Bar. In that capacity the examiners act as an arm of the court. *In re Petition of DeOrsey*, 112 R.I. 536, 544, 312 A.2d 720, 724 (1973). Following their investigation, the examiners make recommendations to the court about whether an applicant possesses the integrity and veracity to warrant his admission to the bar. *In re Application of Capace*, 110 R.I. 254, 259, 291 A.2d 632, 635 (1972). The court will then review both the examiners' recommendations and the information relied upon by them. Generally, the court will not overturn the recommendation of the examiners unless such recommendation is not well founded. *DeOrsey*, 112 R.I. at 544, 312 A.2d at 724.

 We have recognized that the state has a "substantial and constitutionally permissible interest" in ensuring the high professional standards of attorneys admitted to practice in Rhode Island. *Id.* As final arbiter of an attorney's qualifications, the court must concern itself with protection of the public from incompetent or corrupt attorneys. *Capace*, 110 R.I. at 260, 291 A.2d at 635. To that end, the court has stated that "[v]eracity is a quality that must be employed by an attorney at all times * * * [and] is to be demanded and expected of all who seek the [examiners'] endorsement." *Id.* at 259, 291 A.2d at 635.

In this case, petitioner has admitted that he lied to Carter and Zurier at the interview held May 3, 1982. At that interview, petitioner stated that he had prepared the promissory note and the affidavit. The petitioner later contended that he had fabricated this story in order to protect his brother, Robert Testa. However well intentioned such a display of family loyalty may appear at first blush, the high degree of veracity and integrity required of an applicant for admission to the Rhode Island Bar does not permit us to regard such behavior as acceptable. Because the board occupies a position of authority in the Rhode Island judicial system, lies told to that body or to its representatives can be neither justified nor excused. Although petitioner had not been put under oath prior to being questioned at this first meeting, the lack of a formal swearing does not excuse the lies told by him. Because a member of the bar is an officer of the court and is entrusted with the most important affairs of clients, one must be able to rely completely on an attorney's word whether it is given under oath or not. Alfred Testa, Jr., admittedly failed to abide by this basic requirement.

In addition, although the statements made by Alfred Testa, Jr., to Carter and Zurier were not made under oath, he did in effect ratify and support the truth of the affidavit apparently executed by him under

---

**2.** One member of the Board of Bar Examiners did not participate in this decision because of absence. Another member had died.

oath. Because the affidavit was sworn to before a notary public, the statements asserted therein were regarded as truthful and the document is therefore available as evidence of the facts stated. Lies told regarding such a legal document undermine the judicial system's fundamental reliance upon the veracity of sworn documents and can be neither condoned nor excused.

█ Even though the examiners stated that they found no evidence "to pinpoint the source" of the signatures or "pointing to" petitioner, we cannot accept the conclusion drawn by the examiners from this finding. We believe that the examiners erred regarding the placing of the burden of proof. The examiners apparently decided the burden of proof was on the bar examiners to show that petitioner was not of suitable character to become a member of the bar. The burden was, in fact, upon petitioner to "satisfy the examiners that he had the required intellectual and moral characteristics which would warrant his admission." *Capace*, 110 R.I. at 259, 291 A.2d at 634. Alfred Testa, Jr., failed to meet this burden of proof. Bearing in mind the allocation of the burden of proof, let us examine the evidence. The evidence in the case at bar unerringly points to the following conclusions of fact:

1. Alfred Testa, Jr., was in need of funds and sought his brother's assistance in obtaining a loan in the amount of $30,000.

2. In order to obtain the loan, fraudulent documents were prepared and the signatures of the Fischers were forged thereon.

3. By inadvertence and mistake, the Fischers became aware of the fraudulent loan documents.

4. Upon their becoming aware of the fraudulent loan documents, Alfred Testa, Jr., accepted responsibility for the loan and prepared backdated documents of guarantee. He eventually caused the loan to be paid without financial loss to the Fischers.

5. As a result of the disclosure of the fraudulent loan documents, disciplinary proceedings were commenced against Robert Testa.

6. In the course of these disciplinary proceedings, an affidavit was filed purportedly over the signature and the jurat of Alfred Testa, Jr., accepting full responsibility for the preparation of the fraudulent loan documents.

7. Thereafter, Alfred Testa, Jr., represented to disciplinary counsel facts consonant with the statements set forth in the affidavit.

8. Subsequently, Alfred Testa, Jr., repudiated the facts set forth in the affidavit, denied having executed the affidavit, and further denied having had anything to do with the preparation of the fraudulent loan documents.

9. Robert Testa, in the course of these proceedings, also denies having executed the affidavit, denies knowledge of whether anyone else might have executed it, and further denies that he prepared or executed the fraudulent loan documents. He palliates these assertions by suggesting that because of his involvement with drugs at the time of this transaction, his recollection might not be reliable or accurate. He admits that he "must [ha]ve" directed some unknown person to prepare the affidavit and the loan documents.

10. There is no question that Alfred Testa, Jr., received the proceeds of the fraudulent loan and invested said proceeds in his business. There is further no question that Alfred Testa, Jr., initiated the request for obtaining the loan in the first instance.

We are asked to believe that the fraudulent documents and the affidavit filed in the disciplinary proceedings were prepared by some phantom person or persons unknown to Alfred Testa, Jr., or Robert Testa. These claims are so inherently improbable that we must reject them unequivocal-

ly, even in the absence of contradictory testimony.

We are therefore constrained to conclude that the conduct of both Alfred Testa, Jr., and Robert Testa has been, as the Board of Bar Examiners found, wholly lacking in candor. We believe that their conduct and their testimony have been evasive and untrustworthy. We do not believe that they were unaware of the genesis of the fraudulent documents and the false affidavit.

■ For those reasons, we are of the opinion that Alfred Testa, Jr., has not discharged the burden of proving that he possesses the required high moral character to warrant his admission to the bar at this time.

We are mindful of the fact that no financial losses were suffered by the Fischers. We are further mindful of the fact that the conduct of Alfred Testa, Jr., though inexcusable, is not of sufficient gravity to cause him to be denied admission to the bar permanently or for an indefinite period. We can therefore foresee the possibility that the petitioner might find the circumstances of this case to be a valuable lesson in honesty and truthfulness. The result of his conduct in this case may assist in his future rehabilitation. We consequently suggest that he reapply for admission to the bar directly to this court within a period of not less than six months from the date of the filing of this opinion. At that time he may attempt to convince this court of his readiness to abide by the high standards of veracity required of attorneys at law in this state.

For the reasons stated, the petition of Alfred Testa, Jr., for admission to the bar of this state is hereby denied.

BEVILACQUA, C.J., did not participate in the decision in this case.

MURRAY, J., did not participate in the hearings or in the decision.