In re A.S.                              :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re A.S.                              :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**PER CURIAM.**  The applicant, A.S. (A.S. or applicant),[1]  is before the Supreme Court

of this state on a petition seeking admission to the Rhode Island Bar (the bar).  This Court's

Committee on Character and Fitness (committee) recommended that A.S. be denied admission to

the Rhode Island Bar based on the committee's conclusion that the applicant failed to

demonstrate that he was of good moral character and fitness to practice law.  Before this Court,

the applicant argued that: (1) the committee's findings were erroneous; (2) the committee erred

in concluding that he had failed to satisfy his burden of establishing good moral character and

fitness to practice law; and (3) the committee abused its discretion in declining to reconsider its

recommendation that applicant be denied admission to the Rhode Island Bar.  Oral argument

before the Supreme Court was held on June 7, 2017, pursuant to an order directing the applicant

to appear and show cause why the recommendation of the committee should not be adopted.  For

the reasons set forth herein, we adopt the recommendation of the committee.

---

[1] Because the Court has not foreclosed applicant from reapplying for admission to the bar, we have elected to refer to applicant by initials in the anticipation that applicant may seek to gain admission to the Rhode Island Bar at some point in the future.

## Facts and Procedural History

The applicant graduated from Roger Williams University School of Law in 2015. On April 28, 2015, applicant filed an application with this Court for admission to the Rhode Island Bar (the application). The application consists of a comprehensive document with relevant attachments that is carefully reviewed by the committee during its consideration of the character and fitness of each person seeking admission to the bar; an applicant is required to answer the questions in a candid and forthright manner consistent with the expected character traits of an officer of the court.

In due course and consistent with routine practice, a member of the committee reviewed applicant's responses to the questions set forth in the application and concluded that several of his answers warranted further explanation. In particular, applicant's responses to questions regarding academic discipline, identification of court-related matters and litigation, and a reported arrest were of concern to the committee member. At the time applicant made substantive responses to the questionnaire, applicant refused to provide court documents pertaining to two Family Court child custody and support matters in which he was a named party, as well as documents from an arrest that occurred in 2009. The committee member notified applicant that he was required to supplement the application with detailed explanations regarding the Family Court proceedings and the 2009 arrest in addition to submitting the court documents relative to these matters.

With respect to the 2009 arrest, applicant submitted an amendment in which he disclaimed any specific recollections of the events surrounding the arrest. Specifically, applicant stated:

> "This occurred while attempting to pass through security at T.F. Green Airport. * * * Unbeknownst to me at the time, [my]

> backpack had an area within it on the bottom * * * where items could get stuck, and unfortunately for me, several knives had become lodged there without my knowledge. * * * The police decided to arrest me * * * and (I believe) charged me with possession of a concealed weapon. The case was ultimately dismissed, (I believe) * * *."

The applicant failed to provide any documents relating to the travel or disposition of the criminal case and made no effort to secure copies of his attorney's file that apparently was in the possession of his father's law firm.

Turning to the Family Court litigation, applicant initially refused to produce any documentation, and stated in his application:

> "I am extremely uncomfortable with the concept of providing the complaint and disposition * * * of my son's custody matter given the fact that it contains information regarding him and his mother. I am also frustrated that this [*sic*] asked of me at all, as it has no bearing whatsoever on my character or potential ability (or lack thereof) as an attorney."

As part of the application process, applicant was scheduled to attend a personal interview with the above-referred committee member on July 2, 2015. During the course of that interview, the applicant produced some documents pertaining to the Family Court litigation.[2] The applicant was informed that he was required to provide *all* documents, including those from the arrest, in order to complete the application. The applicant was issued three separate status sheets indicating which documents he was expected to submit.[3]

---

[2] The applicant provided: a portion of the judgment/order from his 2008 Family Court proceeding; a miscellaneous petition for custody in his 2009 Family Court proceeding; and an order from his 2009 Family Court proceeding (concerning health-care coverage and child support).

[3] Specifically, applicant was asked to provide: copies of the complaint/petition, the answer, and the full judgment/order from his 2008 Family Court proceeding; any other orders entered in the 2009 Family Court proceeding; and the arrest records and records regarding the disposition of the criminal case.

- 3 -

The applicant was referred to the full committee for further investigation in the event he successfully passed the July 2015 Bar Examination. The applicant sat for the July 2015 Bar Examination. On October 2, 2015, three months after his interview, applicant was notified that the required documents delineated in the status sheets had still not been provided. On October 14, 2015—nearly six months after he submitted his application—applicant provided the committee with the documentation necessary to complete the application. The applicant failed the July 2015 Bar Examination.

On November 30, 2015, applicant applied to retake the Bar Examination in February 2016. A.S. passed the exam and was issued a notice to appear before the committee as part of the committee's investigation. On June 7, 2016, a preliminary hearing was held, during which applicant appeared with counsel.[4] At the outset, applicant was informed that it was his burden to establish by clear and convincing evidence that he possessed the requisite character and fitness to practice law in the state of Rhode Island. The committee expressed concern with respect to applicant's reluctance to produce the court records associated with the Family Court proceedings, his lack of candor, and his failure to explain adequately the circumstances and procedural history of his arrest and subsequent criminal charge. The applicant provided the committee with an explanation of the facts surrounding his arrest at T.F. Green Airport for possession of throwing knives. However, applicant insisted that he could not recall whether he had in his possession one knife or multiple knives, notwithstanding that in his original answer, applicant stated that he was found to be in possession of several knives.

---

[4] The applicant's counsel consisted of his father, who is a member of the bar of this state, and an associate in his father's law office.

On July 5, 2016, applicant appeared before the committee for a second hearing. During this hearing, applicant was asked to explain his responses to questions on the application regarding academic discipline.[5]

On September 14, 2016, the committee invited applicant to attend the committee's upcoming meeting on October 3, 2016. The applicant elected not to attend. Thereafter, the committee finalized its factual findings, and concluded as follows:

> "1. [Applicant] displayed an intentional lack of candor in his responses to certain questions on the Bar Application.
>
> "2. [Applicant] had no legal basis for withholding certain information and documents sought on the Bar Application.
>
> "3. [Applicant] was reticent in responding to subsequent requests for information that he failed to provide with his Bar Application.
>
> "4. [Applicant] indicated the only reason he ultimately turned over the documents that he initially failed to provide was because he thought he would not get his license to practice law otherwise.
>
> "5. [Applicant] displayed disdain for and hostility towards the character and fitness process in how he chose to respond to requests for information that is sought from every bar applicant.
>
> "6. [Applicant] appears to operate from the perspective that his own perceptions of fairness should trump any rules or requirements to which he is subject.
>
> "7. [Applicant] has displayed a persistent pattern of resisting authority and being unwilling to comply with requirements that he deems to be unfair, unless and until compliance is forced upon him.
>
> "8. [Applicant], both directly and through his attorney, displayed a significant lack of respect for the character and fitness process as well as a significant lack of awareness or interest in how his behavior is perceived by others."

---

[5] The applicant also was asked to explain certain statements and declarations that he made in his application for admission to Roger Williams University School of Law.

Accordingly, the committee concluded that applicant had failed to meet his burden of proving by clear and convincing evidence that he possessed the requisite character and fitness to practice law in the state of Rhode Island. As a result, on December 9, 2016, a majority of the committee voted[6] and recommended to this Court that applicant should be denied admission to the practice of law.

On December 23, 2016, applicant filed with the committee a request to reopen and reconsider its recommendation of denial of admission to the Rhode Island Bar.[7] The committee declined applicant's request to reopen and reconsider its recommendation. On May 17, 2017, applicant petitioned this Court for a hearing. On June 7, 2017, the Court heard oral argument.

## Standard of Review

This Court "will not overturn a recommendation of this Court's Committee on Character and Fitness * * * unless it has 'abused its discretion or its decision is clearly wrong.'" *In re Webb*, 58 A.3d 150, 154 (R.I. 2013) (quoting *In re Roots*, 762 A.2d 1161, 1163 (R.I. 2000)). "We will do so, however, if 'such recommendation is not well founded.'" *Id.* (quoting *In re Roots*, 762 A.2d at 1164).

## Analysis

Article II, Rule 3(a) of the Supreme Court Rules of Admission of Attorneys and Others to Practice Law provides: "All persons who desire to be admitted to practice law shall be required to establish by clear and convincing evidence their moral character and fitness to the satisfaction of the Committee on Character and Fitness of the Supreme Court of Rhode Island in advance of

---

[6] Although the committee unanimously concluded that applicant failed to establish the requisite character and fitness for admission to the bar, the committee voted five to two in favor of recommending denial of admission.

[7] Included with this request, applicant submitted numerous letters of recommendation in favor of his admission.

such admission." At all times, the applicant retains "the burden of proving his [or] her good moral character." Rule 3(f). Moreover, "[t]he failure of any applicant to answer any question * * * or to supply any documentary material requested by [the committee] * * *, shall justify a finding that the applicant has not met the burden of proving his [or] her good moral character." *Id.*

The committee found that applicant had failed to meet his burden of proving by clear and convincing evidence that he possessed the requisite fitness and character to practice law in Rhode Island. The committee found that applicant "displayed an intentional lack of candor," that he "was reticent in responding to subsequent requests for information that he failed to provide with his Bar Application," that he "displayed disdain for and hostility towards the character and fitness process," and "displayed a persistent pattern of resisting authority." These are serious findings.

As noted, the vote to recommend denial of admission to the practice of law was not unanimous, and the chairman of the committee, who voted in the minority, filed with this Court a separate memorandum explaining his reasoning for voting in favor of applicant's admission. According to the chairman, he "felt the majority had applied the correct legal standard * * * but that [he] had simply come to a different factual conclusion," believing instead "that [applicant] would benefit from conditional admission under the supervision of an experienced attorney." Significantly, and notwithstanding the chairman's conclusion that applicant should be conditionally admitted to practice law, the chairman "did not believe that [applicant] had established, by clear and convincing evidence, his moral character and fitness." Notably, the conclusion that applicant failed to sustain his burden of proving that he was of good moral character and fitness to practice law was unanimous.

Before this Court, applicant argues that he presented clear and convincing evidence of his good moral character and fitness and points to his diligence and success as a student in support of that position. Further, applicant argues that the committee's findings that he is hostile to authority and that he has "displayed a persistent pattern of resisting authority" are erroneous and should not preclude his admission to the bar. The applicant also disputes the committee's finding that he "displayed an intentional lack of candor." Finally, applicant claims that the committee abused its discretion in declining to reopen that proceeding and reconsider its recommendation that applicant be denied admission to the Rhode Island Bar.

It is uncontested that applicant's educational credentials are meritorious. He was a member of the Roger Williams University School of Law Honors Program, President of the Student Bar Association, and active in the community. These accomplishments are commendable. However, this Court has recognized that educational achievements, while "praiseworthy, * * * are largely irrelevant in establishing [an applicant's] moral fitness and good character to practice as a member of [the Rhode Island Bar]." *In re Roots*, 762 A.2d at 1166-67. Indeed, "mere intelligence and academic achievement do not necessarily equate to moral fitness and good character, both of which are preconditions to becoming a member of our bar." *Id.* at 1167.

Moral fitness and good character are judged on the basis of the totality of the circumstances, with particular emphasis placed on the applicant's honesty, candor, veracity, and demeanor. *See In re Vose*, 93 A.3d 33, 39-40 (R.I. 2014) (concluding that the evidence of the applicant's hostility, contempt, and manner of disclosure supported the committee's finding that the applicant lacked the requisite moral character and fitness to practice law); *In re Testa*, 489 A.2d 331, 334 (R.I. 1985) (examining the applicant's integrity and veracity in considering the

applicant's requisite moral character and fitness to practice law). These traits are demonstrated through the bar application process, as demonstrated by an applicant's candor and forthrightness in responding to questions, conscientious attention to any deficiencies in the application, his or her willingness to comply with the necessary prerequisites, including an interview, full disclosures, and response to document requests. *See In re Roots*, 762 A.2d at 1168 ("safeguard[ing] the administration of justice from those who might subvert it through misrepresentations, falsehoods, or incomplete disclosures when full disclosure is necessary.") (citing Donald T. Weckstein, *Recent Developments in the Character and Fitness Qualifications for the Practice of Law: The Law School Role; The Political Dissident*, 40 Bar Exam. 17, 23 (1971)). Thus, while applicant's academic success is "praiseworthy," *id.* at 1166, it was incumbent on applicant to establish his moral fitness and good character by means other than a recitation of his academic achievements.

Commendably, the committee conducted an exhaustive investigation of applicant's character and fitness, which included extensive correspondence about the deficiencies in his application, several hearings, and a review of applicant's supporting letters of recommendation.[8] The committee raised legitimate concerns with respect to three responses applicant provided in his original bar application: (1) applicant's response to question twenty-seven and his refusal to provide copies of documents relating to child support litigation in the Family Court; (2) applicant's response to question twenty-eight and his failure to provide records regarding an arrest that was expunged; and (3) applicant's response to question twenty and an academic penalty consisting of a grade-reduction imposed while applicant was in law school. The

---

[8] We note that applicant submitted a plethora of letters of recommendation filed after the committee issued its decision. These letters were provided to the members of the committee in advance of its decision declining to reconsider its recommendation to this Court.

committee found applicant to be reticent, and even hostile, in responding to requests for information, and found that he displayed an attitude that was disdainful of the committee's authority and responsibility. We agree with these findings and the conclusions made by the committee.

Moreover, applicant failed to come forward with the documents requested by the committee—documents that are relevant and critical to the assessment of an applicant's character and fitness. His reasoning in support of his refusal to provide such documents as the Family Court complaints and his answers likewise is troubling. At the June 7, 2016, hearing, applicant explained that he declined to provide the documents relating to his Family Court proceedings because "[he] didn't think it was * * * anyone's [*sic*] business * * *." The applicant expressed his belief that the request for those documents "was out of line, to say the least." The applicant claimed that he was concerned with the confidential nature of the documents and that he wanted to avoid violating the privacy of his son's mother. However, instead of promptly providing a redacted copy of the requested material or seeking to file the material under seal, he simply failed to produce the documents for a significant period of time.[9]

The applicant demonstrated hostility toward the committee, consistently expressing his disdain for the application process on more than one occasion.[10] Although applicant contends

---

[9] We pause to note that the records A.S. refused to produce consisted of a Family Court Complaint for child support filed by the state of Rhode Island on behalf of the child's mother and a *pro se* motion seeking to substitute the applicant's health insurance policy in lieu of monetary payments for health insurance.

[10] Applicant's response to an inquiry from a committee member as to why applicant failed to provide Family Court records is indicative of his distressing lack of respect for the application process:

> "[A.S.]: I understand that, but as far as, because you really want it,
> the choice wasn't because you really want it. It was, you do it, or

- 10 -

that he presented clear and convincing evidence of his good moral character, the record demonstrates that he was argumentative and defensive in his appearance before the committee on June 7, 2016. For example, applicant set forth in his answer to question twenty-seven: "I have no intention of attaching the complaint or any other document relating to my son's mother." When a committee member raised applicant's response as a significant concern and read applicant's response aloud to him, in lieu of any explanation, applicant declared, "[t]hat's absolutely correct." In addition, at the July 5, 2016, hearing, applicant expressed his opinion about the application process, which he described as "invasive, unlawful * * * [and] the process that I see as not right, either morally or *lawfully* * * *." (Emphasis added.) Additionally, at the June 7, 2016, hearing, applicant declared:

> "As compared to Massachusetts, what I had to go through, or I should say what I didn't have to go through, it's very different, in a good way, in their state. I wish it was more like that here, although I understand there are probably plenty of reasons why we are different * * *."

The applicant's failure to appreciate his burden of proving his fitness and good moral character is further buttressed by the fact that he returned to Family Court in order to obtain a routine modification of the Order mandating health coverage *before* he complied with the committee's repeated requests to produce the documents.

Finally, the record before us evinces a lack of candor on the part of the applicant. Although he truthfully disclosed the fact of his arrest and the Family Court litigation, applicant

---

you don't get to become a lawyer. So, I didn't really have much of a choice.

"But I can assure you—obviously, you can choose to believe me or not—but no, my stance was not, no, because I said so, I don't want to give it to you. If that was the case, I would have done that for a lot more questions, a lot more, like my credit report, and countless other things, but I didn't."

failed to provide the factual details or court files surrounding those events. Indeed, with respect to the arrest, applicant referred the committee to his attorney should the committee desire any further information about that incident. As to the Family Court litigation, applicant flatly refused to produce any records and characterized one case as a custody matter. This response was not accurate. The Family Court Complaint was brought by the state seeking child support for the child whose mother may have been receiving public assistance, and did not relate to child custody.

The transcript from the June 7, 2016, hearing reflects the concern of a committee member about applicant's "failure at the outset to be forthcoming with respect to the facts about [the arrest]," to which concern applicant responded that his failure to provide a detailed explanation was because "[his] attorney told [him] not to." However, documents to clarify this incident ultimately were located in storage at his father's office and could have been provided had there been a good-faith effort to comply with the committee's request. There was no evidence suggesting that applicant made *any* effort to locate the file in a timely manner. The applicant's failure to respond in a timely and forthright manner also demonstrates a lack of respect for the committee's process. Furthermore, the delay in producing the Family Court records—several months after his interview with the committee member responsible for scrutinizing his application—is telling. Rather than produce materials when requested, the record discloses that applicant first returned to Family Court, *pro se*, in order to substitute his employer-provided medical insurance for his son.

After reviewing the transcripts from the hearings, as well as applicant's responses to the committee's requests for documents, we are of the opinion that the findings of the committee are supported by the record and are not erroneous. Therefore, the Court accepts the findings of the

committee. It is apparent to this Court that applicant has demonstrated a lack of insight into the importance of the bar application process and the significance of the mandate that it is an applicant who bears the burden of demonstrating good moral character and fitness to practice law. Additionally, we are satisfied that the committee did not abuse its discretion in declining to reconsider its recommendation that applicant be denied admission. During argument it was revealed that each committee member was in possession of all of the material submitted by the applicant, including the numerous letters of support. The committee declined to take up the motion to reconsider. There is no procedural rule providing for reconsideration, nor is there any suggestion that the facts relied upon by the committee were erroneous. Accordingly, we conclude that applicant has not satisfied his burden of proving, by clear and convincing evidence, his fitness to practice law in this state.

However, the Court also is satisfied that applicant should not forfeit an opportunity to seek admission to the bar of this state in the future. We reach this conclusion based on his statements before this Court in which he acknowledged that he was responsible for the position in which he found himself; and that his "misguided decisions during the bar application process" meant that he was unable to serve people who needed legal representation. The applicant also recognized the time this Court has expended on this matter because he "was too thickheaded to handle the bar application process properly." We agree with these remarks and are impressed by his humility. We do not seek to dissuade applicant from reapplying for admission to the bar of this state at some later date.

We are mindful that applicant is a member of the Massachusetts Bar and is authorized to practice law in the Commonwealth of Massachusetts. We deem it prudent, however, to remind the applicant that he is not authorized to practice law in this state for any client with any matter.

*See* G.L. 1956 § 11-27-5; *see also* Article V, Rule 5.5 of the Supreme Court Rules of Professional Conduct.

**Conclusion**

For the reasons set forth herein, the applicant's petition for admission to the bar of this state is denied. This decision shall not preclude the applicant from reapplying for admission to the bar at some later time by filing a written request for consideration with the committee. The written request for consideration shall be filed no sooner than two years from the date of the oral argument on June 7, 2017, and shall include an updated response to the Petition/Questionnaire for Admission to the Rhode Island Bar, and a sworn affidavit that the application has complied with the Court's admonishments in this opinion. The applicant shall detail with particularity his activities and employment during the intervening period, including any public service or volunteer work the applicant has performed. If the applicant reapplies for admission to the bar within three years from June 7, 2017, he shall not be required to retake the bar examination.

**Justice Indeglia, with whom Justice Flaherty joins, dissenting.** With all due respect to the members of the committee on Character and Fitness (the committee), as well as our colleagues on the Court, we cannot accept the recommendation that A.S. (the applicant) be denied admission to the Rhode Island bar at this time. Rather, we agree with the two committee members who instead suggested that the applicant be conditionally admitted pursuant to Article II, Rule 3 of the Supreme Court Rules of Admission of Attorneys and Others to Practice Law. As one of those members wrote to this Court, "[the applicant] would benefit from conditional admission under the supervision of an experienced attorney * * * other than his father or another member of his firm." Conditional admission would give the applicant the opportunity to address

- 14 -

and adjust the aspects of his character that were of concern to the committee and, should the committee have reason to believe that he breached any of the conditions, it would have the authority to petition this Court "for an order to show cause why the conditional license should not be immediately terminated." Rule 3(o)(1). For this reason, we respectfully dissent.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re A.S. |
| **Case Number** | No. 2017-0413-MP |
| **Date Opinion Filed** | December 13, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Per Curiam |
| **Source of Appeal** | Committee on Character & Fitness |
| **Judicial Officer From Lower Court** | Committee on Character & Fitness |
| **Attorney(s) on Appeal** | For Applicant: <br><br> Lauren E. Jones, Esq. <br> William K. Wray, Jr., Esq. |
| | For Committee on Character & Fitness: <br><br> Julie P. Hamil, Esq. <br> General Counsel |