Supreme Court
No. 2024-194-M.P.

In re J.M.                    :

**O R D E R**

The applicant, J.M. (J.M. or the applicant), is before the Supreme Court on a petition seeking admission to the Rhode Island Bar (the bar). This Court's Committee on Character and Fitness (the committee) recommended that J.M. be granted a three-year conditional admission to the bar. At this Court's direction, J.M. appeared at a hearing to show cause why the Court should accept the committee's recommendation. For the reasons set forth below, we find that cause has not been shown, and we respectfully decline to accept the recommendation of the committee and deny the applicant's petition for admission to the bar.

J.M. graduated from Roger Williams University School of Law (RWUSL) in 2022 at the age of forty-three. On June 1, 2023, J.M. filed an application with this Court for admission to the bar by transfer of a qualifying Uniform Bar Examination (UBE) score pursuant to Article II, Rule 1B of the Supreme Court Rules of Admission of Attorneys and Others to Practice Law, which application was subsequently amended six times.

The application raised significant concerns relative to two academic suspensions, one in college and one while attending RWUSL, as well as multiple arrests and civil litigation matters. In accordance with Article II, Rule 4(c)(1), J.M. met with an individual committee member, where the contents of her application were discussed. As a result of that interview, the application was referred to the full committee for further evaluation consistent with Article II, Rule 4(c)(3).

By letter dated August 18, 2023, J.M. was advised that her application was referred to the full committee and that a preliminary hearing would be held on September 19, 2023. That letter also informed J.M. that the hearing would be stenographically recorded and that J.M. might appear with counsel. Additionally, the letter advised that, in accordance with Article II, Rule 4(a), all applicants are required to establish by clear and convincing evidence their good moral character and fitness to practice law to the satisfaction of the committee.

The hearing took place as scheduled, and J.M. appeared without counsel. She testified under oath and was questioned by the committee's attorney and members of the committee. J.M.'s testimony at the hearing, along with her application and the subsequent amendments revealed the following.

J.M. was suspended from two academic institutions. The first suspension was the result of poor academic performance when J.M. was a college student. The

second academic suspension occurred when J.M. was in her early forties and a first-year student at RWUSL.

This suspension stemmed from an incident in which J.M., following the end of a dating relationship with a fellow classmate, enrolled the classmate in various pornographic websites, without the classmate's knowledge. With respect to this issue, J.M. testified that she was "in a dating relationship with another student, and he was in a dating relationship with quite a few other students that [she] didn't know about [and she] didn't handle that betrayal very well, admittedly." In reaction to that situation, J.M. used the other student's "school e-mail" to register him "for numerous pornographic websites and [she] made a profile of the classmate on the dating site using potentially embarrassing personal information." J.M. described the websites at issue as "counterculture." J.M. conceded that she may have falsely represented herself as her fellow classmate in making these registrations. J.M. engaged in this conduct over a four-day period. Based on the preponderance of the evidence, RWUSL found J.M. responsible for violating three provisions of RWUSL's Student Code of Conduct: (1) harassment or the creation of a hostile environment, (2) sexual harassment, and (3) inappropriate use of the school's information technology to harass another or to transmit or make accessible pornographic or sexually offensive material.

As a result of her actions, J.M. was suspended from RWUSL for the remainder of her second semester and the summer of 2019, a no contact order was put in place between J.M. and the classmate at issue, and J.M. was required to attend counseling prior to her return to RWUSL. It does not appear that criminal charges were filed against J.M.

The committee also considered J.M.'s criminal record. Specifically, J.M. was arrested at least seven times between 1999 and 2015. Excluding an arrest in connection with a parking ticket, J.M. was arrested for: unlawful acts relating to drugs; driving under the influence and a refusal to submit to a chemical test; disorderly conduct, twice; willful trespass; and, simple assault, thrice (two of which occurred on the same day). This criminal behavior occurred while J.M. was between the ages of twenty-one and thirty-seven. Generally, the criminal matters were dismissed, or the applicant received a filing or entered an "Alford Plea." *See Camacho v. State*, 58 A.3d 182, 188 (R.I. 2013) (explaining that an Alford Plea occurs when a defendant maintains her innocence but acknowledges that there is evidence in the case sufficient so that a jury could find her guilty beyond a reasonable doubt).

Following the hearing, but before the committee rendered a decision, J.M. requested that she be permitted to supplement the record with letters in support of

her admission to the bar. The committee granted this request, and letters in support of the applicant's admission were submitted in December 2023 and January 2024.

On April 10, 2024, in accordance with Article II, Rule 4(d), the committee notified J.M. via letter sent by mail and email, that it was recommending to the Court that she be granted a three-year conditional admission. The conditions of admission included monthly meetings with an approved mentor of the bar and mental health counseling with reports of each to be submitted in a monthly or quarterly manner. In its recommendation to the Court, the committee reasoned that it "found [J.M.] to be credible and found that she met her burden of proving by clear and convincing evidence that she possesses the requisite character and fitness to practice law in Rhode Island." Approximately one hour after receiving the committee's letter, J.M. responded by email to the Court's bar administrator. Among other things but most pertinent to the instant matter, J.M. stated: "Regarding the conditions, the decision took an unconscionably and outrageously long time * * *."

On April 19, 2024, this Court issued an order directing J.M. to appear before the Court on May 30, 2024, to show cause why the Court should adopt the committee's recommendation. On May 22, 2024, counsel entered an appearance on behalf of J.M. Two days prior to the show cause hearing, J.M. moved to further supplement the record, and that motion was denied prior to the hearing.

J.M. and her counsel appeared at the show cause hearing. J.M.'s counsel argued that J.M is entitled to be admitted to the bar because she has been transparent with the committee about her plethora of prior bad acts and answered questions in an honest and forthright manner. J.M.'s counsel also relied upon prior opinions from this Court and argued that the committee did not abuse its discretion by recommending a three-year conditional admission.

J.M. was also provided with an opportunity to address the Court. J.M. noted that she has been a member of the Massachusetts Bar since 2022. During this time, J.M. worked "of counsel" at a Massachusetts law firm, where she worked minimal hours, and at a healthcare company in the field of data privacy and security. No disciplinary complaints were filed against J.M. during this time. J.M. expressed remorse for her conduct in law school and, when questioned about her email to the bar administrator wherein she stated that "the decision [of the committee] took an unconscionably and outrageously long time," J.M. explained that her response was her providing "feedback."

Pursuant to Article II, Rule 4(a), an applicant "shall be required to establish by clear and convincing evidence their good moral character and fitness to practice law to the satisfaction of the Committee on Character and Fitness in advance of admission to the Rhode Island Bar." This Court, in turn, is charged with accepting, rejecting, or modifying the committee's recommendation. Article II, Rule 4(e)(1).

"This Court 'will not overturn a recommendation * * * unless [the committee] has abused its discretion or its decision is clearly wrong.'" *In re A.S.*, 173 A.3d 1280, 1284 (R.I. 2017) (quoting *In re Webb*, 58 A.3d 150, 154 (R.I. 2013)). This Court will, however, overturn the committee's recommendation "if such recommendation is not well founded." *Id.* (quoting *In re Webb*, 58 A.3d at 154).

The Court recognizes and appreciates the care and consideration that the committee put into this matter. The applicant, by virtue of her troubling history that was juxtaposed with support offered by her community, presented the committee with a great deal to consider. The Court has no doubt that the committee struggled with this matter and reached what it felt was the proper conclusion.

Despite the Court's sincere respect for the committee and the critical function it performs, the Court's responsibility is to assure itself that the committee's recommendation is well founded. Based on the record before the Court, we simply cannot find that.

The Court does not reach this conclusion lightly. It recognizes that J.M. was forthcoming and transparent throughout the bar application and committee review process. Additionally, J.M. has clearly earned the respect of many individuals, including those in her law school community who wrote letters of support on her behalf. Further, the Court is mindful that, although J.M. suffered certain academic setbacks, she at other points excelled. J.M. graduated *magna cum laude* from college

and was a high performing student at RWUSL who achieved academic and extracurricular success as a member of the moot court team and law review.

Nonetheless educational achievements, while "praiseworthy, * * * are largely irrelevant in establishing [an applicant's] moral fitness and good character to practice as a member of our bar." *In re Roots*, 762 A.2d 1161, 1166-67 (R.I. 2000). That is because they "do not necessarily equate to moral fitness and good character * * *." *Id.* at 1167.

It is that moral fitness and good character that are lacking here. The applicant engaged in reprehensible conduct just as she was embarking on her quest to enter a profession duty-bound by oaths and honesty. While the Court is mindful that many applicants have youthful indiscretions, that is not what occurred here. The applicant's actions against her fellow classmate occurred when she was forty-one years old and already in law school. A person of this age, and with the intelligence reflected in the applicant's academic accomplishments, presumably has developed the ability to understand the consequences that naturally flow from their actions. Moreover, this is not one poor decision that was made in haste; J.M. engaged in this inappropriate behavior over a four-day period.

The Court is likewise disturbed by the applicant's pointed and discourteous response to what she perceived as a delay in the committee making a recommendation. Aside from being discourteous to the committee—which we note

is comprised of voluntary members of the bar who all have fulltime employment—the applicant's response displays a lack of insight into the seriousness of both her conduct and the committee's consideration of it. We deem this response to be lacking in candor. It also undermines the applicant's assertion that she has learned to better control her emotions so that a situation such as that which occurred in law school will not happen again.

These factors, taken in conjunction with the applicant's multiple prior arrests, reflect that the applicant does not possess the character and fitness to become a member of the bar at this time. Therefore, we conclude that the committee's recommendation was not well founded based upon the totality of the information presented in J.M.'s application and her subsequent conduct. The Court declines to accept the committee's recommendation.

For the reasons set forth herein, the applicant's petition for admission to the Rhode Island bar is denied. This decision shall not preclude the applicant from reapplying for admission to the bar by filing a written request for consideration with the committee no sooner than two years from the date of the issuance of this order. The request shall include an updated response to the Petition/Questionnaire for Admission to the Rhode Island Bar and a sworn affidavit, wherein the applicant shall detail with particularity her activities and employment during the intervening period, including any public service or volunteer work the applicant has performed. If the

applicant reapplies for admission in accordance with this order, the two-year time limitation on the transfer of her UBE score shall not apply.

Entered as an Order of this Court this  3rd  day of July, 2024.

By Order,

/s/ Meredith A. Benoit, Clerk
_____

Clerk

**Chief Justice Suttell and Justice Long, dissenting.** We would accept the recommendation of the Committee on Character and Fitness and grant J.M. conditional admission to the Rhode Island Bar. We would, however, extend the period of conditional admission from three years to five years.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## ORDER COVER SHEET

| | | |
|---|---|---|
| **Title of Case** | In re J.M. | |
| **Case Number** | No. 2024-194-M.P. | |
| **Date Order Filed** | July 3, 2024 | |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. | |
| **Source of Appeal** | Character and Fitness Committee | |
| **Judicial Officer from Lower Court** | N/A | |
| **Attorney(s) on Appeal** | For Committee:<br><br>Chrisanne Wyrzykowski, Esq. | |
| | For Applicant:<br><br>Richard Ratcliffe, Esq. | |